[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 272 
Appellant was indicted and convicted in Jefferson County for promoting prostitution in the first degree. After considering two prior convictions, the trial court set sentence at 50 years.
The record shows that Patrolman James D. Wallace of the prostitution detail called a number listed on a card entitled "Southern Escort Service." Patrolman Wallace gave his first name and stated that he was a business man from Nashville, Tennessee. He further stated over the phone that he was interested in getting five escorts for him and some associates while they were in Birmingham. Before the conversation ended, a deal was struck in which the service would provide five girls at $100 per girl.
On the agreed upon date, Patrolman Wallace rented a room in a Birmingham motel. He and four other undercover agents waited for the "escorts." Around 11:30 p.m., appellant showed up with one escort, a fourteen year old girl.
After Patrolman Wallace complained that the deal involved five girls, appellant responded that the girl with him was "practically a virgin" who had brought a large amount of money on the streets. Appellant also stated that the girl would have sex with all five men.
Appellant also told the agents that he was about to pick up two more girls at another motel. Patrolman Wallace gave appellant $100 and a credit card, and he and *Page 273 
another undercover agent then rode with the appellant to get the other girls. After they all returned to the first motel room, appellant was arrested.
Wallace also testified that appellant had brought a clipboard with a picture of some sort of movie projector appellant had allegedly invented. According to Wallace, appellant stated he brought the picture as a cover in case the men turned out to be policemen.
The other undercover agents at the scene were called to testify and they corroborated Patrolman Wallace's testimony.
William Darden, a revenue examiner for Birmingham, was also called by the state. Mr. Darden stated that there was no record that appellant had a license to run an escort service.
Appellant did not testify nor did he call any witnesses to the stand.
Appellant contends that the absence at trial of the fourteen year old "companion" of appellant denied him a fair trial. The record indicates that the witness' mother had sent the witness to live with the witness' father in Memphis, Tennessee. Appellant argues that the witness should have been compelled to appear and testify.
Appellant cannot object to the absence of the witness in the trial itself. The record is devoid of any indication that, before or during trial, appellant attempted on his own or by process of court to obtain the presence of the witness at trial. Such lack of diligence at trial constitutes waiver of compulsory process.Thornton v. State, Ala.Cr.App., 390 So.2d 1093, cert. denied, Ala., 390 So.2d 1098 (1980); Ex parte Craft, 41 Ala. App. 519,138 So.2d 266 (1962).
The first time any action was taken to obtain the testimony of the witness was after the trial. Appellant filed a motion for new trial alleging that the witness was a material witness who would give crucial testimony. In connection with the motion for a new trial, a motion to compel the witness to appear and testify at a hearing on the motion for new trial was filed. The motion for a new trial was denied.
Although appellant moved to dismiss the case at the close of the trial because of the absence of the witness, the question of compulsory process of the witness was never raised at trial. Because appellant never made any effort to procure the attendance of the witness at trial, he cannot base his motion for new trial on her absence. Granting a new trial on this basis would allow appellant to speculate on the verdict of the jury. Jarrell v.State, Ala.Cr.App., 355 So.2d 747 (1978).
It follows that, since appellant could not base his motion for a new trial on the witness' absence, the trial court did not err in not compelling the witness to appear and testify at the motion hearing.
Moreover, there is nothing from a review of the motion to compel attendance or from the record to indicate that the motion was ever ruled on by the trial judge or even brought to his attention. The law is well settled in Alabama that, to reserve appellate review of a motion, an adverse ruling from the trial court must be secured. Van Antwerp v. State, Ala.Cr.App.,358 So.2d 782, cert. denied, Ala., 358 So.2d 791 (1978).
Appellant argues that the trial court improperly sustained the state's objection to appellant's counsel's closing argument reference to the fact that the state had not called the witness to testify. The law in Alabama is that one party may not comment unfavorably on the other party's failure to produce a witness supposedly favorable to that party if the witness is equally available to both sides. Hurst v. State, 54 Ala. App. 254,307 So.2d 62, cert. denied, 293 Ala. 548, 307 So.2d 73 (1974). Conversely, one may comment on the absence of such a witness if the witness is unavailable to one party while available to another. McMorris v. State, Ala.Cr.App., 394 So.2d 392, cert. denied, Ala., 394 So.2d 404 (1981).
Appellant argues that the witness was available to the state, but not to him. Appellant insists that the state could have subpoenaed the witness through "Alabama's *Page 274 
Uniform Act to Secure the Attendance from Without a State in Criminal Proceeding," while he had no such procedure available. See § 12-21-280 et seq., Code of Alabama 1975.
However, as this court in McMorris, supra, stated, "The availability of a witness to one or the other of the parties is determined initially by the party's (in this case, the state's) superior knowledge of the existence and identity of the witness. Additionally, the relationship between the witness and the party that would reasonably be expected to affect the witness' personal interest in the outcome of the case is another factor in determining to whom a witness is available.
"Whether a witness is available or accessible within the meaning of the rule prohibiting comment upon failure of a party to call or examine a witness does not mean availability or accessibility for subpoena purposes, but rather a particular party's superior knowledge of the existence, identity and expected testimony of the witness."
Obviously, appellant knew of the existence and identity of the witness as well as the state. It is also doubtful that the state would have any superior knowledge of how the witness would testify. The undercover agents took no written statement from the witness and apparently never interviewed her. In fact, if any party could be construed to have superior knowledge of the witness' potential testimony, it would be appellant, not the state. Appellant had marked and preserved in the record an affidavit in which the witness claimed that she was only along for the ride and not involved in any sort of prostitution.
Appellant contends that there was an issue of his mental competence to stand trial and that the trial court should have made a determination of appellant's sanity as required by §15-16-21, Code of Alabama 1975. Part of the determination demanded by appellant was psychiatric examination at Bryce Hospital.
Under the provisions of § 15-16-21, if a defendant is under indictment and confinement for a felony, and if the trial court finds that there is a reasonable and bona fide doubt as to defendant's sanity, the trial court is to further investigate by submitting the issue to a jury or establish some other method of determining the defendant's competency. If there does exist such a reasonable and bona fide doubt in the trial court's mind, such a determination under § 15-16-21 is mandatory. Atwell v. State, Ala.Cr.App., 354 So.2d 30, cert. denied, 354 So.2d 39 (1977).
Nevertheless, it is left to the discretion of the trial court as to whether such a reasonable and bona fide doubt of sanity exists and thus whether the further investigation provided by §15-16-21 is required. The decision of the trial judge on such a matter is raised on appeal only upon proof of abuse of discretion. Williams v. State, Ala.Cr.App., 386 So.2d 506 (1980);Richardson v. State, Ala.Cr.App., 354 So.2d 1193 (1978).
Also, a defendant has no absolute right to receive a mental examination as to his sanity whenever he requests one, and, absent such a right, the trial court is the screening agent as to such request. Dixon v. State, Ala.Cr.App., 357 So.2d 690 (1978).
A review of the evidence convinces us that the trial court did not abuse its discretion in not proceeding with a determination of appellant's competency.
The trial itself is completely devoid of any evidence of incompetency. The issue was never raised in any pretrial or trial proceedings. Appellant did not raise the issue until the sentencing hearing.
At the sentencing hearing, appellant's counsel claimed that he had just learned that appellant had been committed to Bryce Hospital for two short periods in 1968 and in 1971. This information was contained in the presentencing report which stated that, "It was determined by the staff at Bryce Hospital that the subject was not insane but had severe emotional problems. Subject has also seen a psychiatrist while in the fourth grade and the same conclusion was reached at that time . . ." (State's Exhibit 4). *Page 275 
Appellant also made issue of the fact that a Georgia judge had written across a sentencing order when appellant was sentenced in 1974 for child molestation that appellant needed psychiatric treatment.
Besides the fact that appellant was found to be sane when at Bryce in 1968, appellant's mental history is in no way dispositive of whether he is presently competent to stand trial.
 "The competence of an accused to stand trial is determined by whether at the time of the trial he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has rational as well as factual understanding of the proceeding against him." (Emphasis added.) Atwell, supra.
The evidence in the record as to appellant's understanding of the trial proceedings and his ability to consult with his attorney led to the conclusion that the trial court did not abuse its discretion. The court made numerous observations during the sentencing hearing of appellant's capacity to stand trial.
At one point, the trial court stated:
 "The Court has not — there's no doubt in the Court's mind that he is perfectly sane. In fact, he is very sane. He handles himself as good as any lawyer. Of course, he's had a lot of experience. He's as good as a lawyer, assuming most lawyers are sane. Anyway, I'm going to deny that."
Later, in the proceeding, the trial court commented:
 "I've watched this defendant at the trial of this case. I've seen him. I've gotten habeas corpus motions, letters. He's handled himself like he sure knows what he's doing. He may have emotional problems, but he knows what's going on."
Finally, the court observed:
 "Firstly, there is no doubt that this defendant is not insane in the slightest degree. He is not suffering from any mental disease or defect. No doubt he may well be — I don't know what his problem is, but he was clearly competent in the trial of this case. He understood the work. He worked with you. He would tell you this and that and I watched him throughout the trial and since then, of course, I have received his many communications and they are all done well. Of course he has had experience in it, but they are done well and drawn well. I don't have any doubt that he is not only competent in the trial, but he is sane."
In the present case, the trial court heard the witnesses and observed the appellant during the trial and the sentencing hearing. The trial judge is in a far better position to determine the appellant's competency to stand trial than is a reviewing court who relies on the record. Williams, supra.
Appellant also testified during the sentencing hearing. While his testimony was somewhat erratic and childish, he was definitely able to communicate his feelings to the court. In fact, appellant was able to cite two cases in support of an argument he made to the court.
In light of the record as a whole, we find no error in the trial court's actions.
Appellant argues that he cannot be convicted of promoting or advancing prostitution when there is no statute prohibiting prostitution itself. Appellant emphasizes the fact that the state legislature decided not to include the crime of prostitution in the 1975 Code.
However, there is a statute declaring prostitution a crime in this case. Under the municipal law of Birmingham, prostitution is deemed a crime. §§ 11-7-31; 11-7-34, Code of Birmingham 1980. For whatever reason, the legislature chose to leave the prohibition of prostitution to localities while prohibiting various other acts relating to prostitution, such as promoting prostitution. Perhaps the legislature believed appellant's act was of a more serious nature than the act of prostitution itself and thus should be addressed in the state code. This seems to be especially so in the case of appellant's conviction under §13A-12-111 (a)(2) which makes criminal the offering of minors as prostitutes for profit. *Page 276 
In any event, the underlying act of prostitution is a criminal act in the jurisdiction where appellant committed the act of promoting prostitution.
Appellant also contends that, as a matter of the sufficiency of the evidence, he could not be convicted of promoting prostitution when, under state law, it was not proven that Ms. Liles had committed prostitution. Appellant cites a 1920 case which held that one or occasional acts of illicit sexual intercourse did not constitute prostitution. Wilson v. State, 17 Ala. App. 307,84 So. 783 (1920). It should be noted that the same case defines prostitution as the act of fornication for hire.
However, without deciding the confusing point of what exactly constitutes prostitution, we are satisfied that there was sufficient evidence of promoting or advancing prostitution as defined under § 13A-12-110. Under this section, one is deemed to "advance" prostitution if ". . . he knowingly . . . procures or solicits patrons for prostitution, provides persons or premises for prostitution purposes . . ." Under this definition, there was evidence to support a conviction of promoting prostitution.
Appellant alleges that the state should have given appellant pretrial notice of the prior convictions it was going to use in invoking the Habitual Offender Act. Appellant contends that we would have been aware of the Georgia court's notation that appellant needed psychiatric help before the trial if he had been given earlier notice.
This court has previously held that such pretrial notice is not required as long as it is given at a "reasonable time" before presentencing hearing. Holley v. State, Ala.Cr.App.,397 So.2d 211, cert. denied, Ala., 397 So.2d 217 (1981). The record shows that appellant was given such notice before at least by the end of the trial. This was sufficient prior notice of the prior conviction. Holley, supra. Also, the record indicates that appellant was given an FBI rap sheet listing the prior convictions before the trial had begun.
Moreover, even if the pretrial motion was not in the form of the actual sentencing report that contained the Georgia court's notation, it was not the state's duty to notify appellant's counsel of appellant's past mental problems. The fact that a Georgia court wrote on a sentencing report that appellant was in need of psychiatric help was irrelevant for the purposes in which the state used the prior convictions. The state was only required to give some sort of notice of the prior convictions at a "reasonable time" prior to the presentencing hearing, and in the instant case the state met this requirement. Holley, supra; Rule 6 (b)(3)(ii), Alabama Rules of Criminal Procedure — Temporary Rules.
In a related matter, appellant contends that the state improperly proved the two prior convictions in invoking the Habitual Offender Act.
The state offered into evidence a certified judgment entry from Tuscaloosa County showing that appellant had been convicted of grand larceny. The state also offered documents from Georgia showing that appellant had been convicted of child molestation in Georgia.
Appellant objected on two specific grounds: (1) the use of a certified judgment entry is not best evidence and (2) the Georgia documents were not properly authenticated in that the Georgia Secretary of State had not properly certified the document. The same specific objections were argued in appellant's brief.
There is no merit to these grounds.
This court has consistently held that a proper method of proving prior convictions is by the use of certified judgment entries. Thatch v. State, Ala.Cr.App., 397 So.2d 246, Ala.,397 So.2d 253 (1981); Highsmith v. State, 55 Ala. App. 272,314 So.2d 874 (1975).
As to the authentication of the Georgia documents, neither state nor federal law requires the Secretary of State of a sister state to certify any record of court before it may be admitted into our courts. 28 U.S.C. § 1738 (1977), § 12-21-70, Code *Page 277 
of Alabama 1975. Although the Georgia documents were not certified by the judge of that court, appellant is bound by his specific objections at trial, which were properly overruled. Specific grounds of an objection waive all other grounds, and the trial court cannot be put in error for admitting evidence though it was subject to another objection. Ward v. State, Ala.Cr.App.,376 So.2d 1112, cert. denied, Ala., 376 So.2d 1117 (1979);Sprinkle v. State, Ala.Cr.App., 368 So.2d 554, cert. denied,368 So.2d 565 (1978).
Appellant's final argument is that the Habitual Offender Act is unconstitutional in that it constitutes cruel and unusual punishment and in that the legislature unconstitutionally delegated to the Supreme Court the authority to promulgate rules regarding notice of prior convictions.
The Act has previously passed the "cruel and unusual punishment" challenge. Holley v. State, Ala.Cr.App.,397 So.2d 211, cert. denied, Ala., 397 So.2d 217 (1981).
§ 13A-5-10 directs that procedure surrounding a presentencing hearing be established by rule of court. Such procedure, including notice of prior convictions, is laid out in Rule 6 (b)(3) of the Alabama Rules of Criminal Procedure (Temporary Rules).
It is true that the legislature in passing criminal statutes may not delegate its legislative power to make laws. This power generally consists of the power to define crime and fix the punishment for it. State v. Skinner, 20 Ala. App. 204,101 So. 327.
Nevertheless, "while a legislative body cannot delegate its legislative power to make a law, it may delegate the power to an arm of the government to make and enforce regulations for the execution of a statute according to its terms." Ex parteMcCurley, Ala., 390 So.2d 25 (1980). Although McCurdy, supra, dealt with legislative delegation of rule making authority to the executive branch, it applies equally to the delegation of procedure making authority to the judiciary. Thus, the legislature did not unconstitutionally delegate to the judiciary authority to set the procedure to be followed in hearings mandated by § 13A-5-10.
We find no error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.