Appellant, Billy Wayne Waldrop, was convicted of robbery-murder in violation of § 13A-5-40, Code of Alabama 1975, and sentenced to death. This appeal follows.
The first issue is whether the trial court committed reversible error by not granting Waldrop's motion to be committed to Bryce Hospital for a mental examination. Two witnesses were questioned during the hearing on this motion. Don Weathington, the coordinator for the Cheaha Mental Health Center, testified that he made a one-hour-and fifteen-minute examination of Waldrop. During the examination, he tried to determine if Waldrop was aware of who he was, where he was, why he was there, and what was happening to him. Based on this examination, Weathington concluded that *Page 955 
Waldrop was suffering from no mental disorder of any type.
Ray Nelson, a former cellmate, testified that Waldrop was sometimes easy to talk to and sometimes was in his own world. He further testified that Waldrop discussed death and once suggested that both he and Nelson should stab themselves with knives in the stomach. He stated that Waldrop once cut himself with a razor.
Although Nelson's testimony indicates that Waldrop's behavior was odd or deviant, it in no way indicates that he was mentally incompetent to stand trial. The judge's denial of the motion for a mental examination was based on the testimony of a competent mental health expert. The trial judge is obligated to order a mental examination only when there is reasonable or bona fide doubt as to a defendant's sanity. Ala. Code § 15-16-21
(1975). It is left to the discretion of the trial court as to whether there is a reasonable or bona fide doubt as to sanity and, thus, whether a further examination is required.Livingston v. State, 419 So.2d 270 (Ala.Cr.App. 1982). The burden of showing a reasonable doubt rests on the defendant (appellant). Minniefield v. State, 47 Ala. App. 699,260 So.2d 607 (1972). We find no error with regard to this issue.
Waldrop's next issue was that of venue. Waldrop produced newsmen from Talladega County who testified that news stories concerning the murder victim and the suspect were broadcast on radio and television at least four times a day for several days. There were also many articles on the subject in the local newspaper. Based on this extensive coverage, Waldrop claimed that he was prejudiced and could not get a fair trial in Talladega County. This motion for change of venue was denied.
Publicity alone, even if inordinate, is not sufficient to warrant a change of venue. Some prejudicial effect of the publicity must be shown. Thompson v. State, 374 So.2d 377
(Ala.Cr.App. 1978). In the case sub judice, there was no showing that the publicity would cause prejudice. There was no showing that the publicity was not objective, factual or that it was of the type that would inflame the community. Waldrop, therefore, failed to carry his burden on this motion. This issue was raised during the jury selection and none of the potential jurors indicated that the publicity would prejudice them toward Waldrop. It was not error to deny the motion.
Next, Waldrop takes issue with the admission of his confession. Officer Dennis Surrett testified that before Waldrop made his statement he was advised of the following:
 "You have the right to talk to a lawyer to have him present with you while you are being questioned. If you want a lawyer and cannot afford one, the court will appoint one for you. You have the right to remain silent. Anything you say, can, and will be used against you in a court of law."
Waldrop argues that this warning was inadequate because he was not told that he could request counsel after questioning began, that he could stop the questioning at anytime, and that he would be provided with counsel after questioning started if he so requested.
Informing a defendant that he has the right to remain silent, that statements he makes will be used against him, and that he has a right to the presence of an attorney, either retained or appointed, will satisfy the Miranda requirements. Mack v.State, 348 So.2d 524 (Ala.Cr.App. 1977). No precise language is required in warning a defendant of his constitutional rights.Mack, supra. The warning in this case was adequate.
Waldrop also argues that his confession was obtained by trickery. He testified that the officers who tape recorded his statement told him that the statement was needed to prepare him for a lie detector test and was, therefore, obtained by trickery. The officers involved in taking the statement denied telling Waldrop he was about to undergo lie detector tests. *Page 956 
The trial court is not required to accept the testimony of the accused if there is substantial testimony by others sufficient to constitute a predicate for admission of evidence of a confession. Moore v. State, 415 So.2d 1210 (Ala.Cr.App. 1982). Even assuming that the officers did make representations to Waldrop about a lie detector test, we fail to see how that "tricked" Waldrop into confessing. The issue is without merit.
Waldrop's last issue deals with comments made by the prosecutor during his closing argument. The prosecutor referred to Waldrop as a murderer and a robber, and at one point said, "Billy Wayne Waldrop and his partners in crime had no more regard for human life than you or I would for a fly we swatted."
In a proper case, the prosecuting attorney may characterize the accused or his conduct in language which, although it consists of invective or opprobrious terms, accords with the evidence of the case. . . ." Barbee v. State, 395 So.2d 1128,1134 (Ala.Cr.App. 1981). The evidence in this case supported the inferences drawn by the prosecutor. There was no error.
In accordance with § 13A-15-53, Code of Alabama 1975, we have reviewed the sentence proceedings of this case and found no error. Additionally, the trial court's findings concerning the aggravating and mitigating circumstances are supported by the evidence.[1] After considering each of the aggravating and mitigating circumstances set out in the statute, the court found that Waldrop and his accomplices entered the victim's home, robbed him, killed him, and then burned his house and body. The court also found that Waldrop had committed two prior murders. No evidence of any mitigating circumstances was introduced.
This court further finds that the sentences were not imposed under the influence of passion, prejudice, or any other arbitrary factor. An independent weighing of the aggravating and mitigating circumstances by this court indicates that death was the proper sentence in this case. Finally, the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases. Beck v. State, 396 So.2d 645 (Ala. 1980).
We have searched the record and have found no error prejudicial to the substantial rights of Waldrop. The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.
[1] The trial court's findings of facts, setting forth its findings as to aggravating and mitigating circumstances, are attached as Appendix A.
 APPENDIX "A" IN THE CIRCUIT COURT OF TALLADEGA COUNTY, ALABAMA STATE OF ALABAMA, VS. BILLY WALDROP, Defendant. CASE NO. CC 82-387
FINDING OF FACT BY THE COURT FROM THE EVIDENCE AND TESTIMONY PRESENTED DURING THE TRIAL PHASE OF THE TRIAL SUMMARIZING THE CRIME AND THE DEFENDANT'S PARTICIPATION THEREIN
That sometime prior to June 2, 1982, the defendant, Billy Waldrop, together with Eugene Singleton and Henry Mayes, planned and conspired together to rob, burglarize his house, and murder, if necessary, Thurman Macon Donahoo, a resident of Alpine, a rural area in Talladega County, Alabama. In furtherance of this scheme and conspiracy, the conspirators obtained a pistol to carry out their plan. The defendant and his co-conspirators knew or believed that the victim owned and possessed a large diamond ring, which he wore regularly and which was reputed to be of considerable *Page 957 
value. The victim did, in fact, own a diamond ring of approximately five carats, and it was, in fact, very valuable. Pursuant to their scheme, plan, and conspiracy, the defendant, Billy Waldrop, with one or more of his co-conspirators and accomplices, proceeded to the home of the victim on the night of June 2, 1982. When they arrived at his home, the victim was alive and in possession of the ring. When they left, the victim was dead or dying, and the defendant and his accomplices were in possession of the ring, together with other items of value taken from the house of the victim. After committing the robbery, burglary, and murder, and before leaving the scene of the crime, the defendant and his accomplices set fire to the victim's house, obviously to destroy any and all evidence of their crime. The house was completely destroyed by the fire and the victim's body was burned almost beyond recognition. The body, or portion remaining, was found partially beneath an overturned refrigerator. The next day the defendant and co-conspirator Mayes were in the State of Tennessee attempting to dispose of the ring and other items that had been stolen from the victim. They were unsuccessful and returned to Alabama, where they ultimately disposed of the ring for the sum of $10,000.00, the defendant receiving most of the money. By intense and excellent police work, the diamond was ultimately recovered and positively identified.
The murder of the victim was of the intentional killing type while the defendant and his accomplices were committing robbery in the first degree and burglary in the first degree. The intent required in the various counts of the indictment are not mutually exclusive, and the defendant and his accomplices possessed all of the requisite intent to sustain a conviction on each count of the indictment; and the jury so found. The jury likewise was instructed that the felony murder doctrine had no application to a capital offense for which the defendant was being tried.
Since the law requires only a summary of the crime, the Court feels that the foregoing finding should suffice, and will not go into the defendant's flight, capture, and the details of the evidence leading to his conviction. The evidence introduced in a five day trial, both direct evidence and circumstantial evidence, adequately, and in fact overwhelmingly, supported the jury's verdict. The defendant was a full participant, accomplice, and co-conspirator in this pre-planned brutal murder and intentional killing.
This the 22nd day of March, 1983.
 s/William C. Sullivan
WILLIAM C. SULLIVAN Presiding Judge
 FINDINGS OF FACT IN REGARD TO THE PUNISHMENT PHASE OF THE TRIAL
The State proved beyond a reasonable doubt and to a moral certainty that the defendant had two prior convictions for second degree murder; and the Court so finds. The State had proven the defendant guilty of two provisions of the capital punishment offenses as set out in Section 13A-5-40, being murder by the defendant during a robbery in the first degree, or an attempt thereof committed by the defendant, and murder by the defendant during a burglary in the first degree, or an attempt thereof committed by the defendant.
The defendant offered little or no evidence of mitigating circumstances as provided in Sections 13A-5-51 nor 13A-5-52. At the conclusion of the sentence hearing the jury returned a verdict recommending that the defendant be punished by death. The vote was 12 for death and none for life without parole.
The Court finds that the conduct of the defendant constituted a brutal, aggravated, merciless, and intentional killing of a helpless elderly man, and that the recommendation of the jury as to the punishment to be imposed was fully justified by the facts and circumstances of the case and the lack of any mitigating circumstances.
The Court further finds that the sentence of death was not recommended by the jury *Page 958 
under influence of passion, prejudice, or any arbitrary factor. The Court finds that both the defendant and the victim were male caucasians. The Court further taking judicial knowledge of the proceedings conducted before it finds that the composition of the jury trying the defendant in this case was as follows: five white males, three white females, two black males, two black females.
 CONSIDERATION AND FINDINGS OF THE COURT IN DETERMINATION OF SENTENCE
As required by Section 13A-5-47 (b), the Court ordered and received a written Pre-sentence Investigation Report consisting of some eleven pages, which is ordered to be included in the record of this case. Copies of the Pre-sentence Report were furnished to both the attorneys for the defendant and the District Attorney. The Court has carefully read, studied, and considered the Pre-sentence Report before arriving at the final decision determining the sentence herein. Nothing contained in the Pre-sentence Report would, in the opinion of the Court, constitute a mitigating circumstance as provided in either Section 13A-5-51 or 13A-5-52.
The Court finds under Section 13A-5-49 as follows:
 1. The capital offense was not committed by a person under sentence of imprisonment;
 2. The defendant was previously convicted of two other felonies involving use or threats of violence to the person, both said felonies being murder in the second degree;
 3. The defendant did not knowingly create a great risk of death to many persons;
 4. The capital offense was committed while the defendant was engaged or was an accomplice to the commission of or an attempt to commit or flight after committing or attempting to commit robbery and burglary;
 5. The capital offense was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
 6. The capital offense was not committed for pecuniary gain;
 7. The capital offense was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
 8. The capital offense was not especially henious, atrocious, or cruel compared to other capital offenses. The Court finds under Section 13A-5-51 as follows:
 1. The defendant has a significant history of prior criminal activity;
 2. The capital offense was not committed while the defendant was under the influence of extreme mental or emotional disturbance;
 3. The victim was not a participant in the defendant's conduct nor did he consent thereto;
 4. The defendant was an accomplice in the capital offense committed with another person and his participation was not relatively minor;
 5. The defendant did not act under extreme duress or under the substantial domination of another person;
 6. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired;
 7. The age of the defendant at the time of the crime was 31 years.
The Court finds that there are no mitigating circumstances as defined in Section 13A-5-51. The Court has made a diligent search under the provisions of Section 13A-5-52 to determine if there is any aspect of the defendant's character or record or any circumstances of the offense for which he has been convicted that would constitute a mitigating circumstance, and finds none.
In considering the aggravating circumstances, the Court finds that the defendant has twice previously murdered two human beings. Considering these aggravating circumstances, *Page 959 
together with the other aggravating circumstances heretofore enumerated under Section 13A-5-49, the Pre-sentence Investigation Report, the absence of mitigating circumstances, the facts of the case at hand, and the jury's recommendation of a death sentence, there is only one logical conclusion as to the defendant's punishment, that conclusion being that he should suffer the punishment of death by electrocution as provided by law. This defendant does not possess a single redeeming feature nor attribute and should be executed for the crime he has committed.
So Be It.
This the 22nd day of March, 1983.
 s/William C. Sullivan
WILLIAM C. SULLIVAN Presiding Judge