510 So.2d 578 (1987)
Gloria Jean ANDERSON
v.
STATE.
1 Div. 12.
Court of Criminal Appeals of Alabama.
February 24, 1987.
Rehearing Denied May 12, 1987.
Certiorari Denied June 19, 1987.
On Return to Remand June 30, 1987.
*579 John Bertolotti, Jr., Mobile, for appellant.
Charles A. Graddick, Atty. Gen. and M. Beth Slate, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-1107.
TAYLOR, Judge.
Gloria Jean Anderson was indicted for capital murder, to-wit: murder during a robbery in the first degree of Owen Y. Gaston, a violation of § 13A-5-40(a)(2), Code of Alabama 1975. She was found guilty of said charge and was sentenced according to the jury's recommendation to life imprisonment without the possibility of parole.
During the morning of August 30, 1984, the appellant, a prostitute, showed a friend a .25-caliber automatic pistol and asked him whether she had loaded it properly. She had not, so he loaded it correctly for her. She claimed someone was harassing her, and that if he "messed with" her that day she would shoot him. Later that day, she was observed talking to a male in a white-over-blue Chevrolet. Shortly thereafter, the male, later identified as the victim herein, was observed slumped over the steering wheel. He had been shot three times with a .25-caliber pistol. The victim's wallet was found on the ground 30 to 35 feet from the car. The appellant fled the city, hiding out in Dothan and Montgomery, where she was arrested on September 25, 1984. Inside the appellant's apartment the police found blood stains on the clothes she reportedly had worn on August 30, and found a .25-caliber automatic pistol. A ballistics examination positively matched the gun to the bullets removed from the body of the deceased victim.

I
Before the trial, the appellant requested a psychological evaluation. She was then evaluated by a doctor chosen by her. The report indicated that the appellant had a relatively low I.Q., was probably mildly retarded, and had led a hard life. The doctor found, however, that she was competent to stand trial. Just before closing arguments, appellant's attorney moved for a mistrial, or in the alternate a continuance, claiming the appellant was incompetent to stand trial. The motions were denied.
A conviction obtained while the defendant is incompetent to stand trial violates due process. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed.2d 835 (1956). Ex parte LaFlore, 445 So.2d 932 (Ala.1983). The test for determining competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understandingand whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). This standard has been applied in this state. Ex parte LaFlore, supra; Edgerson v. State, 53 Ala.App. 581, 302 So.2d 556 (1974). "In short, [its] emphasis is on capacity to consult with counsel and to comprehend the proceedings...." Pate v. Robinson, 383 U.S. 375, 388-89, 86 S.Ct. 836, 844, 15 L.Ed.2d 815 (1966) (Harlan, J., dissenting).
*580 In Livingston v. State, 419 So.2d 270 (Ala.Cr.App.1982), this court concluded that under the provisions of § 15-16-21, Code of Alabama 1975, if a defendant is under indictment for a felony and the trial court finds that there is a reasonable and bona fide doubt as to his sanity the trial court is obligated to further investigate either by submitting the issue to a jury or establishing some alternative method of determining his competency. Livingston, 419 So.2d at 274. This court held that if a bona fide and reasonable doubt does exist in the trial court's mind then such a determination under § 15-16-21 is mandatory. Id., citing, Atwell v. State, 354 So.2d 30 (Ala.Cr.App.), cert. denied, 354 So.2d 39 (Ala.1977).
However, "it is left to the discretion of the trial court as to whether such a reasonable and bona fide doubt of sanity exists, and thus whether the further investigation provided by § 15-16-21 is required." Livingston, at 274. The trial judge, who hears and sees the evidence and observes the defendant, is in a far better position to determine a defendant's competency to stand trial than a reviewing court, which relies on the record. See, Williams v. State, 386 So.2d 506 (Ala.Cr.App.1980); citing, Richardson v. State, 354 So.2d 1193 (Ala.Cr.App.1978). Therefore, "the decision of the trial judge on such a matter is raised on appeal only upon proof of abuse of discretion." Livingston, 419 So.2d at 274, citing, Williams, 386 So.2d at 510; and Richardson, 354 So.2d 1193.
In this case the trial court was not required to submit the question of appellant's competency to a jury, because the issue did not reach that stage in the progression of events. The court determined that there was not a bona fide question of competency or a need to stop the trial in order to raise the issue of competency before the jury or in another alternative way.

II
Appellant claims that the prosecutor improperly used his allotted peremptory strikes to remove blacks from the jury. In this case, the state struck nine of the ten black veniremen and placed the tenth venireman as alternate juror. She argues that the United States Supreme Court's recent ruling in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), controls, and requires the prosecutor to show a race-neutral reason for striking the black veniremen. The decision in Batson is to be applied retroactively. Ex parte Jackson, [Ms. 84-1112, December 19, 1986] (Ala.1986).
"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."
Batson, 476 U.S. ___, 106 S.Ct. at 1723.
"The prosecution must show that the challenges "`were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race.'" Jackson v. State, at ___, quoting State v. Neil, 457 So.2d 481, 487 (Fla.1984)."
Smith v. State, [Ms. 6 Div. 5, February 10, 1987] (Ala.Cr.App.1987). We, therefore, remand this case to the trial court for it to conduct a hearing "in order for the prosecution to come forward with race-neutral explanations for his use of the ... peremptory strikes, and, if he is unable to do so and the trial court determines that the facts establish a prima facie case of purposeful discrimination, the appellant is entitled to a new trial. Should the trial court find no prima facie showing of purposeful discrimination, a return shall be filed with this court containing the evidence at this hearing and the trial judge's findings following the hearing." Smith, supra.

III
On cross-examination of the accused, the court, over objection, permitted the prosecutor to question appellant about a statement in which she said she had robbed plenty of men downtown. The following occurred:
"Q: Mrs. Anderson, you know, you've admitted to robbing several men downtown. *581 How did you rob these other folks?
"A: Well, what do you mean by that?
"Q: How did you do it? I've never robbed anybody. I don't know how you do it.
"A: Well, it's just not necessarily just so-called robbing nobody. You know, me and this girl, Brenda Boone, we be together and guys go out to my house. TheyI'm not forcing nobody out to my house. They go out there on their own will. You know, they go out there for theirself.
"Q: Well, when you rob somebody you're taking their money away from them by force, aren't you?
"A: No, I don't force nobody. I don't take nobody's money.
"Q: But you say in this statement and you admitted that you said that you robbedlet me give it to you in your own words. Quote: `I done robbed plenty of men downtown.'
"A: What are you saying? You said I beat mens up. I don't do that.
"Q: I'm asking you how you robbed folks?
"A: I don't just exactly rob nobody. I'm not a robber and I'm not a murder [sic]. I don't murder nobody. I'm not that type of person. I was brought better than that."
On rebuttal, the prosecutor was permitted to play a taped recording on which the appellant admitted to beating up a patron who would not pay her. This evidence was properly received in rebuttal of appellant's previous testimony that she had never beaten anyone and further, in rebuttal to her general presentation of herself in testimony as a non-violent person. Vincent v. State, 231 Ala. 657, 165 So. 844 (1936); C. Gamble, McElroy's Alabama Evidence, § 433.01 (3d ed. 1977).

IV
Robbery in the first degree occurs when the defendant, during the course of a robbery, is armed with a deadly weapon or dangerous instrument or causes serious physical injury to another. Section 13A-8-41(a), Code of Alabama 1975. Obviously, both occurred in this case. The appellant contends that the indictment only alleges robbery with a deadly weapon, and that the trial judge only charged the jury about robbery involving serious physical injury to another. That is not correct. The indictment, read as a whole, also charges the death of Owen Y. Gaston by shooting during the robbery. It stated that Gloria Jean Anderson:
"... did in the course of committing the theft of a wallet, the property of Owen Y. Gaston, use force against the person of Owen Y. Gaston with the intent to overcome his physical resistance or physical power of resistance, while the said GLORIA JEAN ANDERSON was armed with a deadly weapon, to-wit: a gun, a violation of § 13A-8-41 of the Code of Alabama. During the aforesaid robbery in the first degree, the said GLORIA JEAN ANDERSON did, with the intent to cause the death of Owen Y. Gaston, cause the death of Owen Y. Gaston by shooting him with said gun, in violation of § 13A-5-40(a)(2) of the Code of Alabama...."
The charge did not result in reversible error. Further, the issue was not preserved for appellate review. Rule 14, Alabama Temporary Rules of Criminal Procedure.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
TAYLOR, Judge.
On remand the circuit court conducted a Batson hearing in compliance with our direction. That court issued the following order:
"This cause was remanded to this Court by the Court of Criminal Appeals to determine whether the prosecution could provide non-racial reasons for its use of peremptory strikes in selecting the jury which convicted the defendant of a capital felony. Anderson v. State [510 So.2d 578, Ala.Cr.App.], 1 Div. 12 (February 24, 1987).
*582 "In complaince with that order and the mandate of Batson v. Kentucky [476 U.S. 79, 106 S.Ct. 1712], 90 L.Ed.2d 69, this Court ordered a hearing for May 1, 1987. Prior to the appointed time, the prosecution candidly informed the Court that its jury selection records were incomplete and, though it did not concede racial bias, it could not satisfy the burden of proof as mandated by Batson.
"Accordingly, it is ORDERED, ADJUDGED, and DECREED that the defendant is entitled to a new trial, which this Court will schedule upon return of the mandate from the Court of Criminal Appeals.
"Done this 5th day of May, 1987."
The court has correctly applied Batson v. Kentucky. This appeal is dismissed.
OPINION EXTENDED; APPEAL DISMISSED.
All the Judges concur.