[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 952 
James Henry Borden, Jr., was convicted of murder made capital because he had been convicted of another murder within the 20 years preceding this offense, see § 13A-5-40(a)(13), Ala. Code 1975. The jury, by a vote of 10-2, recommended that he be sentenced to death. The trial court accepted this recommendation and sentenced Borden to death by electrocution. On appeal, the Court of Criminal Appeals held that the trial court's written sentencing order was deficient in that it failed to comply with the requirement of § 13A-5-47(d), Ala. Code 1975, that the trial court enter specific written findings concerning the existence or non-existence of each aggravating circumstance enumerated in §13A-5-51, and any additional mitigating circumstances offered pursuant to § 13A-5-52. Borden v. State, 769 So.2d 935 (Ala.Crim.App. 1997). Accordingly, the Court of Criminal Appeals remanded the cause for the trial court to enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in §13A-5-49, each mitigating *Page 953 
circumstance enumerated in § 13A-5-51, and any additional non-statutory mitigating circumstances offered pursuant to § 13A-5-52.
On the circuit court's return to that remand order, the Court of Criminal Appeals, on May 29, 1998, wrote another opinion, stating that the amended sentencing order indicated that the trial court had found the existence of two statutory aggravating circumstances: (1) that Borden, in September 1975, had been convicted of a felony involving the use of violence to the person (specifically, second-degree murder) see §13A-5-49(2); and (2) that the capital offense was committed while Borden was engaged in an attempt to commit a kidnapping and a rape, see §13A-5-49(4). The amended order further indicated that the trial court, after making specific written findings as to each circumstance, found that none of the statutory mitigating circumstances enumerated in §13A-5-51 had been proven to exist. The Court of Criminal Appeals affirmed Borden's conviction and his sentence of death. See opinion on return to remand, 769 So.2d at 945.
The facts of this case are stated in the original opinion of the Court of Criminal Appeals as follows:
 "On the morning of September 5, 1993, the appellant [Borden], accompanied by two male companions, drove to the residence of 61-year-old Nellie Ledbetter near Moulton in Lawrence County. While his companions remained in the automobile, the appellant got out and began talking to Ledbetter, who was sitting on the front porch with her two young grandchildren. When Ledbetter's husband appeared on the porch a short time later, the appellant and his two companions left. Approximately 45 minutes later, the appellant returned, this time without his companions. Ledbetter's husband had gone to run an errand. The appellant approached Ledbetter, who was still sitting on the porch with her grandchildren, placed a knife to her throat and told her to come with him. When Ledbetter refused, the appellant began stabbing her with the knife, fatally wounding her. The appellant then fled in his car.
 "Early the next morning, after law enforcement officers obtained a warrant, the appellant was arrested at an apartment in Decatur in Morgan County and was transported to the Lawrence County jail. DNA testing performed on blood found on clothing the appellant was wearing when he was arrested indicated that the blood was not his, that it could have come from Ledbetter, and that only one out of every 1400 Caucasians had a DNA structure similar to that found in the blood.
 "At trial, Ledbetter's husband and her two grandchildren identified the appellant as the man they had seen at the Ledbetter house on the day of the murder. They also identified the appellant's maroon Oldsmobile sedan as the vehicle the appellant was in that day. Ledbetter's 11-year-old grandson, Josh, positively identified the appellant as the man he had seen hold a knife to his grandmother's throat and then stab her in the stomach when she refused to go with him. Josh specifically testified that the appellant told his grandmother, `You better come with me,' before stabbing her. Medical testimony presented at trial indicated that Ledbetter died as a result of receiving two stab wounds, one to the chest and one to the abdomen.
 "Larry Joe Peoples, who, along with Donald Suddieth, accompanied the appellant on his first visit to the Ledbetters' residence on the day of the murder, testified that the appellant left Ledbetter's porch and returned to his car when Ledbetter's husband appeared. According to Peoples, as they drove away from the house, Suddieth told the appellant that the appellant was `just trying to get. . . some of that old lady's pussy,' and the appellant had replied, `Yeah, I probably could if the old man hadn't come up.' *Page 954 
 "Larry Smith, the circuit clerk for Lawrence County, presented into evidence at trial a certified copy of the appellant's record showing that the appellant had previously been convicted of murder in the second degree on September 5, 1975."
769 So.2d at 937-38. (Citations omitted.)
 I.
Borden first argues that his conviction and death sentence are void, because, he says, the trial judge failed to swear in the petit jury which ultimately convicted him of capital murder. The administration of the oath to the petit jury is required by § 12-16-170, Ala. Code 1975, as well as by Rule 18.5, Ala.R.Crim.P. Foshee v. State, 672 So.2d 1387
(Ala.Crim.App. 1995).
On November 28, 1994, at the Lawrence County Courthouse in Moulton, the trial judge welcomed the initial panel of prospective jurors; it then had them stand and state their names, addresses, and occupation. The trial judge administered the oath to the prospective jurors as follows:
 "THE COURT: All right, ladies and gentlemen, let me ask that you all stand and raise your right hand and let me administer an oath to you at this time. If you would raise your right hand. Do you and each of you solemnly swear or affirm that you will true answer make to the questions propounded you by the Court touching your qualifications and competency as jurors, so help you God? If you do, say `I do.'
"THE VENIRE: I do."
(C.R. 112-13).
After questioning and excusing some members of the venire for cause, the trial judge asked those remaining to stand and take their oath as a juror for the week. The trial judge swore them in as follows:
 "THE COURT: Do you solemnly swear or affirm that you will well and truly try all issues and execute all writs of inquiry which may be submitted to you during the present session, and true verdicts render according to the evidence, so help you God? If you do, say, `I do.'
"THE VENIRE: I do."
(C.R. 152.)
While the voir dire examination of the prospective jurors was in progress, the trial judge had his staff call in other persons for jury service. On November 29, 1994, the trial judge organized a second venire and administered the oath to them:
 "THE COURT: At this time, if you would stand and raise your right hand, please. Do you swear or affirm that you will true answer make to the questions propounded you touching your qualification and competency as jurors, so help you God? If you do say `I do.'
"THE PROSPECTIVE JURORS: I do."
(C.R. 406.) After voir dire examination by attorneys for the State and for the defense, the trial judge stated:
 "THE COURT:. . . All right, ladies and gentlemen, it is the opinion of the Court that those of you that are here are qualified. I'm going to ask that you stand at this point in time and take the general oath to be a juror. Those of you that I've talked to I will give you an opportunity to come back and I will talk to you about your particular problems in a moment. But at this time I ask that all of you stand and raise your right hand and take the oath for jury service. Thank you. Do you solemnly swear or affirm that you will well and truly try all issues and execute all writs of inquiry which may be submitted to you during the present session; and true verdicts render according to the evidence, so help you God? If you do say `I do.'
"THE VENIRE: I do."
(C.R. 434.)
Borden's jury was made up of persons from both venires. A check of the names of the members of the jury against those who were sworn on the two venires, shows *Page 955 
that each member was sworn, according to the oath set forth in §12-16-170, Ala. Code 1975. They were not sworn a second time, and they were not reminded of their earlier oath.
This Court stated in Ex parte Deramus, 721 So.2d 242 (Ala. 1998):
 "The fact that the record is silent as to whether the trial court reminded the petit jurors that they were still under oath or administered another oath would be reversible error only if [the defendant] had objected to that defect `during the progress of the trial.' Ala. Code 1975, § 12-16-173."
Here, the record does not reflect that Borden's counsel objected during the course of the trial. The absence of an objection does not preclude this Court from reviewing Borden's claim, however, because Borden has been sentenced to death. "In all cases in which the death penalty has been imposed," Rule 39(k), Ala.R.App.P., requires that this Court "notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner." See Exparte Myers, 699 So.2d 1285, 1290 (Ala. 1997). The absence of an objection in a case involving the death penalty does not preclude this Court's review of the issue; however, the defendant's failure to object does weigh against his claim of prejudice. Ex parte Woodall, 730 So.2d 652
(Ala. 1998).
We must reject Borden's claim that the petit jury that convicted him of capital murder was not sworn. The record plainly reflects that each member of the two jury venires had been sworn once. The record does not indicate that the trial court administered a separate oath to the petit jury that was selected and empaneled to hear Borden's case or that it reminded Borden's jurors that they were still under oath, as it is required to do by Ala. Code 1975, § 12-16-170, and Rule 18.5, Ala.R.Crim.P. Nevertheless, as this Court held in Deramus, the trial court's failure to administer a second oath or to remind the jurors of their previous oath was harmless error.
Borden argues in his brief that the holding in Deramus does not apply in his case because Deramus was not a death-penalty case. While Borden's case is a death-penalty case and Deramus was not, that distinction is not determinative. As the State points out in its brief, § 12-16-173
states: "No criminal case taken by appeal to the Court of Criminal Appeals shall be reversed because of any defect in the administration of the oath to any grand or petit jury, unless the record in the case discloses the fact that some objection was taken in the court below during the progress of the trial, based on such defect." (Emphasis added.) The State argues, "The statute makes no exception for death-penalty cases." In light of this Court's holding in Deramus, and what we consider to be plain language in § 12-16-173, we conclude that a defect in the administration of the oath cannot rise to the level of "plain error," as that term is defined by law. We must reject Borden's argument that his conviction must be reversed because of a defect in the administration of the jurors' oath.
 II.
Borden contends that he is entitled to a reversal of his conviction, on the basis that the trial court failed to hold a competency hearing. He made no issue at trial or on direct appeal regarding a failure to hold a competency hearing. On this certiorari review, however, he argues that at trial he presented evidence that should have raised a "bona fide doubt" (see Pate v. Robinson, 383 U.S. 375, 385 (1966)), or a "reasonable ground for a doubt" (see Barfield v. State, 54 Ala. App. 15, 21, 304 So.2d 257,262 (Ala.Crim.App. 1974)), as to his ability to communicate with counsel and to understand *Page 956 
the nature of the charge against him. Borden contends that the trial judge erred by not ordering a hearing on the question of his competency to stand trial and that the court's failure to order such a hearing violated his due-process rights as guaranteed by the United States Constitution; his rights guaranteed by the Sixth and Eight Amendments to the United States Constitution; and his right to a fair trial as guaranteed by the provisions of Article I of the Alabama Constitution of 1901.
Alabama law is clear and well defined with regard to competency hearings. Section 15-16-21, Ala. Code 1975, states:
 "If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity. . . . "
Section 15-16-21 "authorizes the trial court to make a preliminary determination (without the aid of a jury) as to whether there are reasonable grounds to doubt the defendant's competency to stand trial."Reese v. State, 549 So.2d 148, 150 (Ala.Crim.App. 1989).[2] "[T]he trial court is [, thus,] the screening agent" as to a request for a mental examination. Livingston v. State, 419 So.2d 270, 274
(Ala.Crim.App. 1982).
The trial judge heard expert testimony from Dr. Lawrence R. Maier, a clinical psychologist who had made an evaluation of Borden's mental competency. On cross-examination, Dr. Maier testified as follows:
 "Q. [By Mr. Osborn, the prosecutor] Doctor, I don't believe you testified as to the two main reasons that you saw Mr. Borden. The first would have been his competency to stand trial. Did you make a finding as to his competency to stand trial?
"A. Yes, sir, I did.
 "Q. All right. Explain — or tell the jury what your finding was and explain how you came to that conclusion.
 "A. I offered an opinion. The finding is up to the Court. My opinion was, in summary, that he has adequate understanding of the charge against him, he can participate sufficiently in his own defense, including testifying, and he does have sufficient, although limited, factual and rational understanding of the judicial process, partially because of the extensive prior experience, including even the nature of the charge itself, murder, meaning that he had previously been charged and gone through the legal system on a very identical charge, based on the information I had. So basically my opinion was that despite some weaknesses he could understand and cooperate and even testify if the Court felt that was important."
Dr. Maier's testimony provided the trial judge adequate assurances as to Borden's competency. Based on the expert's testimony, the judge could have concluded that there was no "reasonable or bona fide doubt as to [Borden's] sanity" and, thus, that no further examination was required.See Waldrop v. State, 459 So.2d 953, 955 (Ala.Crim.App. 1983), aff'd,459 So.2d 959 (Ala. 1984), cert. denied, 471 U.S. 1030 (1985).
We must reject Borden's argument regarding the trial judge's failure to hold a competency hearing. *Page 957 
 III.
Borden argues that he is mentally retarded and that the trial court's failure to find mental retardation as a mitigating circumstance entitles him to a reversal of the death sentence. The State counters this argument by pointing out that in his sentencing order the trial judge did consider Borden's mental-health problems but ultimately rejected them as a mitigating factor.
In his amended sentencing order, the trial judge stated:
 "The defendant argued the existence of the statutory mitigating [circumstance] as set forth in § 13A-5-51(2) wherein the capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance. The Court has carefully considered the evidence presented involving the psychological evaluations performed on the defendant by Dr. Lawrence R. Maier and also Dr. William B. Beidleman, and further the testimony was presented [sic] as to whether or not the defendant was drinking to the extent that he was intoxicated and otherwise impaired at the time of the criminal act in question. The Court specifically finds that the mitigating [circumstance] as set forth in § 13A-5-51(2) has not been established and that at the time of the killing of Nellie Ledbetter the defendant was not under the influence of extreme mental or emotional disturbance.
". . . .
 "The defendant also argues the existence of the mitigating [circumstances] set forth in § 13A-5-51(6) that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. The Court also considered the testimony of the two expert witnesses, Dr. Lawrence Maier and Dr. William Beidleman, as well as other evidence presented on behalf of the State and the defendant at the guilt portion of the trial as well as evidence presented during the sentencing phase of the trial. The Court specifically finds that the mitigating [circumstance] in § 13A-5-51(6) has not been established by the defendant.
". . . .
 "The Court has further considered any mitigating circumstances as required to be considered by § 13A-5-52, Ala. Code 1975, as amended, argued by defendant's counsel at the sentencing hearing. Specifically, the Court has considered argument on behalf of the defendant that Mr. Borden has an IQ of 66, is illiterate, and has received no psychiatric care since 1980, due in part to his incarceration. The Court has considered the evidence presented through Dr. Beidleman, which differs in part from the findings of Dr. Lawrence Maier, pursuant to his forensic evaluation of Mr. Borden. Dr. Maier testified that at the time of the crime committed, Mr. Borden had the ability to know and distinguish right from wrong and was not suffering from any type of severe mental illness that would have affected his motivation to commit the crime in question. Dr. Maier also testified that the defendant's consumption of alcohol at the time that he killed Nellie Ledbetter would not have prevented his ability to determine right from wrong. The Court finds the above argument of the defendant to be unfounded as the evidence indicates that the defendant is legally responsible for his own actions."
On the question of a proper sentence in a capital case, the trial court must permit a defendant to submit any evidence the defendant feels might be taken in mitigation during his sentencing. Lockett v. Ohio,438 U.S. 586, 604 (1978); Ex parte Land, 678 So.2d 224, 241 (Ala. 1996);Ex parte Hart, 612 So.2d 536, 541-42 (Ala. 1992), cert. denied,113 S.Ct. 2450 (1993). Borden submitted the evidence regarding his mental condition, and the sentencing order indicates that the *Page 958 
judge considered that evidence. There is no requirement that a sentencing authority must find the evidence offered by the defendant as a mitigating factor; however, the sentencing authority may not be precluded from considering any mitigating factor. Eddings v. Oklahoma, 455 U.S. 404
(1982); Rutledge v. State, 523 So.2d 1087, 1103-04 (Ala.Crim.App. 1987), rev'd on other grounds, 523 So.2d 1118 (Ala. 1988). Clisby v.State, 456 So.2d 99 (Ala.Crim.App. 1983), aff'd, 456 So.2d 105 (Ala. 1984), cert. denied, 470 U.S. 1009 (1985).
The record indicates that the trial judge considered every aspect of the evidence regarding Borden's mental health, and concluded that that evidence did not support the finding of a mitigating circumstance. Thus, we must reject Borden's argument.
 IV.
Borden contends that one of his attorneys at trial had a conflict of interest, specifically, that the attorney, while involved in this case as defense attorney, had a continuing relationship with the Morgan County district attorney's office, as a special prosecutor. Borden contends that the attorney, through his work as a special prosecutor in Morgan County, had a relationship with state law-enforcement agencies, because, Borden argues, the attorney depended on their investigative skills in order to prosecute his own Morgan County criminal cases. Borden argues that his attorney's double judicial role — as a defense attorney in Lawrence County and a special prosecutor in Morgan County — creates a conflict of interest. This conflict, Borden argues, requires that he be given a new trial.
 "It is `a basic constitutional precept' that those prosecuted for criminal offenses have a right to the assistance of counsel during the proceedings. Pinkerton v. State, 395 So.2d 1080, 1085
(Ala.Crim.App. 1980), cert. denied, 395 So.2d 1090 (Ala. 1981). `Where a constitutional right to counsel exists, [the United States Supreme Court's] Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.' Wood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). `[T]he importance of ensuring that defense counsel is not subject to any conflict of interest which might dilute loyalty to the accused has been long and consistently recognized.' Douglas v. United States, 488 A.2d 121, 136 (D.C. 1985). More than 45 years ago, the United States Supreme Court declared: `The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client.' Von Moltke v. Gillies, 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309
(1948) (emphasis added [in Molton]). The right to conflict-free counsel applies whether counsel is appointed or retained. See Cuyler v. Sullivan, 446 U.S. 335, 343-45, 100 S.Ct. 1708, 1715-16, 64 L.Ed.2d 333 (1980)."
Molton v. State, 651 So.2d 663, 668 (Ala.Crim.App.), on return to remand, 651 So.2d 672 (Ala. Crm. App. 1994).
The State argues that, to entitle a defendant such a Borden to a reversal of Borden's conviction, the conflict of interest alleged must be a true conflict, not a speculative or hypothetical one. "`In order to demonstrate a violation of his Sixth Amendment rights, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance.' Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708,1719, 64 L.Ed.2d 333 (1980)." Dallas v. State, 711 So.2d 1101, 1111
(Ala.Crim.App. 1997), aff'd, 711 So.2d 1114 (Ala. 1998). The State argues that the simple fact that Borden alleges a conflict of interest does not mean that a conflict of interest truly existed. The State argues that this claim, even when considered under the standard imposed by the "plain-error" doctrine (see Rule 39(k), Ala.R.App.P.), does *Page 959 
not entitle Borden to a reversal. We agree with the State's argument.
 V.
Borden argues that his arrest was illegal because, he says, the arrest warrant was not properly "domesticated" by a judge or magistrate of the county where he was arrested, as is required by § 15-10-10, Ala. Code 1975. Borden was arrested in Morgan County on an arrest warrant issued by the Lawrence County District Court. The Lawrence County felony warrant had not been endorsed by a judge or magistrate of Morgan County. Borden further argues that certain evidence, specifically blood obtained from the clothing he was wearing at the time of his arrest, was the product of an illegal arrest and, therefore, was not properly admitted as evidence.
We hold that a law enforcement officer may not obtain an arrest warrant in one county and execute it in another county without also obtaining, before executing the warrant, its endorsement by a judge or magistrate of the county where the arrest is to take place. This procedure is required by § 15-10-10, Ala. Code 1975. We have had prior cases holding to the contrary, but these cases were based on a mistakenly expansive reading of Rule 3.3(a), Ala.R.Crim.P. See Taylor v. State, 666 So.2d 36, aff'd on return to remand, 666 So.2d 71 (1994), cert. denied, 666 So.2d 73 (Ala. 1995); Smith v. State, 727 So.2d 147 (Ala.Crim.App. 1998); aff'd,727 So.2d 173 (Ala. 1999); Beard v. State, 661 So.2d 789
(Ala.Crim.App. 1995).
That rule reads, in its entirety:
 "By Whom. The arrest warrant shall be directed to and may be executed by any law enforcement officer within the State of Alabama."
The phrase "within the State of Alabama" merely completes the description of the category of persons who may obtain and execute arrest warrants, to include all law enforcement officers within that category. The Committee Comment to Rule 3.3 so indicates:
 "The rules provide a functional definition of `law enforcement officer.' Under the definition contained in Rule 1.4(p), anyone who serves as an officer, employee, or agent of the State of Alabama who has a legal duty to maintain order and to make arrests (whether in a general or limited capacity) will be considered a `law enforcement officer' and will be able to execute arrest warrants."
We conclude that the phrase "within the State of Alabama" does not address the question where arrest warrants may be executed, but only the question who may obtain and execute them. The statutory restrictions onwhere arrest warrants, once issued, may be executed remain binding, to protect the public from impostors and to prevent the unexplained disappearance of people from the county.
Section 15-10-10, which the officers violated in this case, is a public safety statute. It allows a judge or magistrate in a particular county to pass on the validity of an arrest warrant issued elsewhere and to pass on the identity and authority of the person who proposes to execute the warrant before that person may take someone there into custody and away from the county. Nothing in this statute conflicts with Rule 3.3(a), Ala.R.Crim.P., so as to imply that Rule 3.3(a) supersedes or preempts the statute.
Because the warrant in the case before us was not domesticated, as required by § 15-10-10, it did not support the arrest of Borden or the seizure of the clothing he was then wearing. Thus, the Court of Criminal Appeals erred in holding that § 15-10-10 did not require that the Lawrence County warrant be endorsed by a judge or a magistrate of Morgan County before the warrant could be executed in Morgan County.
The Court of Criminal Appeals stated in an alternative holding, however, that exigent *Page 960 
circumstances justified Borden's arrest by the local officers — who did, in fact, participate in the arrest — even without a warrant. We agree, and we also agree with the Court of Criminal Appeals that the arrest justified the seizure of the clothes, which could thus be used as evidence against Borden.
 VI.
Finally, we consider whether certain comments made by the prosecutor during closing argument violated Borden's right to a fair trial. Borden argues that the prosecutor improperly commented that Borden "is mildly mentally retarded so he has a license to kill." We quote here the prosecutor's comment that Borden complains of:
 "Number one, I submit to you that evidence of intoxication in this case is extremely slim. Dr. Beidleman testified that the defendant himself told him he wasn't drunk. The testimony of Peoples was that, well, they had been drinking all night or had been drinking, that is the other two had been out drinking, but that they weren't staggering, speech wasn't slurred, didn't appear to be unsteady on his feet. What does this boil down to? It sounds a little bit like to me, well gee, this guy is drunk so he has a license to kill. He is mildly mentally retarded so he has a license to kill. He's got enough sense to tell the psychiatrist that he didn't do it. Got enough sense to tell the psychiatrist that sex could not have been involved as a motive in this case because he was impotent, he was unable to have sexual relations. He's smart enough to do that, ladies and gentlemen."
Borden did not object to this comment at trial. If it was error, it clearly was not "plain error." See Rule 39(k), Ala.R.App.P.
 VII.
We have thoroughly reviewed the record, acting pursuant to Rule 39(k), Ala.R.App.P., and we have found no "plain error" that would warrant a reversal of the conviction. The Court of Criminal Appeals addressed three issues raised by Borden: (1) whether the trial court erred in denying his motion to suppress physical evidence obtained following his arrest; (2) whether his constitutional rights were violated by his absence from a pretrial hearing held on November 17, 1994; and (3) whether the trial court's finding, as a statutory aggravating circumstance, that Borden, when he committed the murder, was attempting to kidnap "or possibly rape" the victim, constitutes evidence indicating that the State failed to prove the existence of that statutory aggravating circumstance "beyond a reasonable doubt," as required by § 13A-5-45(e), Ala. Code 1975.
The Court of Criminal Appeals, finding no reversible error, affirmed Borden's conviction and sentence. We affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
HOOPER, C.J., and HOUSTON, SEE, LYONS, and JOHNSTONE, JJ., concur.
MADDOX, J., concurs in Parts I, II, III, IV, VI, and VII, and concurs in the result in Part V.
BROWN, J., recuses herself.*
[2] In its brief, the State cites the phrase "without the aid of a jury" as coming from Ex parte LaFlore, 445 So.2d 932 (Ala. 1983). This phrase is also quoted by Russell v. State, 715 So.2d 866, 868
(Ala.Crim.App. 1997). However, these cases have perpetuated an error in this regard. The "without the aid of a jury" phrase did not appear in Ex parteLaFlore. It appears that the phrase originated with Richardson v. State,354 So.2d 1193, 1196 (Ala.Crim.App. 1978), although that phrase is not directly contained in Richardson either. Nevertheless, the phrase "without the aid of a jury" has been heavily relied on, despite the fact that the legal proposition based on it originated through less than precise research and writing, it has been perpetuated and solidified by postLaFlore opinions.
* Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.
 *Page 356