769 So.2d 935 (1997)
James Henry BORDEN, Jr.
v.
STATE.
CR-94-0453.
Court of Criminal Appeals of Alabama.
September 26, 1997.
Opinion on Return to Remand May 29, 1998.
Rehearing Denied August 14, 1998.
*937 Wesley Lavender, Decatur; and Robert D. Weathers, Jr., Decatur, for appellant.
Bill Pryor, atty. gen., and Michael Billingsley, deputy atty. gen., for appellee.
LONG, Presiding Judge.
The appellant, James Henry Borden, Jr., was convicted of murder made capital because he had been convicted of another murder within the 20 years preceding this offense, see § 13A-5-40(a)(13), Ala.Code 1975. The jury, by a vote of 10-2, recommended that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
The state's evidence tended to show the following. On the morning of September 5, 1993, the appellant, accompanied by two male companions, drove to the residence of 61-year-old Nellie Ledbetter near Moulton in Lawrence County. While his companions remained in the automobile, the appellant got out and began talking to Ledbetter, who was sitting on the front porch with her two young grandchildren. When Ledbetter's husband appeared on the porch a short time later, the appellant and his two companions left. Approximately 45 minutes later, the appellant returned, this time without his companions. Ledbetter's husband had gone to run an errand. The appellant approached Ledbetter, who was still sitting on the porch with her grandchildren, placed a knife to her throat, and told her to come with him. When Ledbetter refused, the appellant began stabbing her with the knife, fatally wounding her. The appellant then fled in his car.
Early the next morning, after law enforcement officers obtained a warrant, the appellant was arrested at an apartment in Decatur in Morgan County and was transported to the Lawrence County jail. DNA testing performed on blood found on clothing the appellant was wearing when he was arrested indicated that the blood was not his, that it could have come from Ledbetter, and that only one out of every 1400 Caucasians had a DNA structure similar to that found in the blood.
At trial, Ledbetter's husband and her two grandchildren identified the appellant as the man they had seen at the Ledbetter house on the day of the murder. They also identified the appellant's maroon Olds-mobile sedan as the vehicle the appellant was in that day. Ledbetter's 11-year-old grandson, Josh, positively identified the appellant as the man he had seen hold a knife to his grandmother's throat and then stab her in the stomach when she refused to go with him. Josh specifically testified that the appellant told his grandmother, "You better come with me," before stabbing her. (R. 617.) Medical testimony presented at trial indicated that Ledbetter died as a result of receiving two stab wounds, one to the chest and one to the abdomen.
*938 Larry Joe Peoples, who, along with Donald Suddieth, accompanied the appellant on his first visit to the Ledbetters' residence on the day of the murder, testified that the appellant left Ledbetter's porch and returned to his car when Ledbetter's husband appeared. According to Peoples, as they drove away from the house, Suddieth told the appellant that the appellant was "just trying to get you some of that old lady's pussy," and the appellant had replied, "Yeah, I probably could if the old man hadn't come up." (R. 686.)
Larry Smith, the circuit clerk for Lawrence County, presented into evidence at trial a certified copy of the appellant's record showing that the appellant had previously been convicted of murder in the second degree on September 5, 1975.

I.
The appellant contends that the trial court erred in denying his motion to suppress physical evidence obtained following his arrest because, he says, the evidence was obtained as the product of an illegal arrest. The appellant maintains that his arrest was illegal because, he says, his arrest warrant was not properly "domesticated" by a judge or magistrate of the county where he was arrested, as provided by § 15-10-10, Ala.Code 1975.
Section 15-10-10 states:
"A warrant of arrest shall be executed in the county in which it was issued, unless the defendant is in another county. When the defendant is in another county, it may be executed therein on a written endorsement on the warrant by a judge or magistrate of that county signed by him, to the following effect: `This warrant may be executed in ____ county.'"
The appellant was arrested in the early morning hours of September 6, 1993, at an apartment in Decatur, in Morgan County, by officers of the Lawrence County Sheriff's Department, the Lawrence County District Attorney's Office, the Moulton Police Department, and the Alabama Bureau of Investigation. Morgan County is adjacent to Lawrence County. Before the appellant's arrest, the officers had obtained from the Lawrence County District Court a felony warrant charging the appellant with the murder of Nellie Ledbetter in Lawrence County. It is uncontested that at the time of the appellant's arrest, the Lawrence County felony warrant had not been endorsed by a judge or magistrate of Morgan County. Following his arrest, the appellant was transported to the Lawrence County jail. Upon arriving at the jail, the appellant was issued a standard county inmate uniform and his clothing was taken from him. At that time, Mike Ball, an agent with the Alabama Bureau of Investigation, noticed what appeared to be bloodstains on the appellant's blue jeans and tennis shoes. Agent Ball subsequently forwarded the appellant's shoes, jeans, and underwear to the Alabama Department of Forensic Sciences for analysis. DNA testing revealed that there was human blood on the appellant's jeans, that the blood could have been Nellie Ledbetter's but not the appellant's, and that only one out of every 1400 Caucasians had a DNA structure that matched Ledbetter's and the blood found on the appellant's jeans. The appellant argues that because his arrest warrant had not been "domesticated" by a Morgan County judge or magistrate, his arrest was illegal and the evidence relating to the blood found on his jeans was due to be suppressed.
The appellant's argument regarding the necessity of "domestication" is unavailing; in fact, the court has already rejected this argument in other cases. In Taylor v. State, 666 So.2d 36 (Ala.Cr.App.), aff'd. on return to remand, 666 So.2d 71 (Ala.Cr. App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996), this court had occasion to address the effect of the Alabama Rules of Criminal Procedure,[1] particularly *939 Rule 3.3, upon the arrest provisions of §§ 15-10-1, et seq., Ala.Code 1975. In Taylor, the defendant was arrested in Birmingham by members of the Gadsden Police Department pursuant to a felony warrant issued in Etowah County. At the time of the defendant's arrest, the warrant had not been domesticated by a judge or magistrate of Jefferson County. In rejecting the defendant's claim that his arrest was illegal for want of proper domestication of the warrant, this court stated:
"Before the effective date of the Alabama Rules of Criminal Procedure in January 1991, `[a] police officer [could] arrest in his official capacity without a warrant only within the limits of the political subdivision of the state of which he is a police officer.' Ex parte Wallace, 497 So.2d 96, 97 (Ala.1986). See also Reed v. State, 48 Ala.App. 120, 122, 262 So.2d 321, 323 (1972); Jenkins v. State, 339 So.2d 133, 136 (Ala.Cr.App.), cert. denied, 339 So.2d 137 (1976). However, Rule 3.3(a), Ala.R.Crim.P., provides: `The arrest warrant shall be directed to and may be executed by any law enforcement officer within the State of Alabama.'
"`The arrest warrant "shall be directed to and may be executed by any law enforcement officer" within the State of Alabama. Allowing a "law enforcement officer" to execute a warrant "within the State of Alabama" is a major change in prior practice, in that under § 15-10-1 those officers authorized to make arrests could be made only "within the limits of the county." As pointed out above, the Committee determined that the definition of "law enforcement officer" should be a "functional definition." See Committee Comments to Rule 3.3.'[[2]]
"H. Maddox, Alabama Criminal Procedure § 3.3 (1990)."
666 So.2d at 60 (emphasis in original; footnote omitted). Thus, the adoption of Rule 3.3(a), Ala.R.Crim.P., authorized a law enforcement officer to execute an arrest warrant in any county of the State without domesticating the warrant in the county of arrest.
In Beard v. State, 661 So.2d 789 (Ala.Cr. App.1995), this court relied on Taylor and Rule 3.3(a) in rejecting a defendant's claim that his arrest for a probation violation was illegal because his probation officer had failed to domesticate an arrest authorization in the county of his arrest, stating:

*940 "The appellant contends that his arrest in Etowah County on a Marshall County probation violation arrest authorization was a violation of § 15-10-10, Code of Alabama 1975. The appellant does not contest the validity of the arrest authorization. The foundation of this issue is that an arrest warrant and a probation officer's authorization for arrest are equivalents; therefore, the arrest must be endorsed by a judge or magistrate in Etowah County. However, the process for arresting probation violators is set out in § 15-22-54, and this Code section has no endorsement requirement.
"Assuming, arguendo, that an arrest warrant and a probation officer's written arrest authorization are equivalents, the appellant's argument still fails. An arrest warrant `may be executed by any law enforcement officer within the State of Alabama.' Rule 3.3(a), Ala.R.Crim. P.; Taylor v. State, 666 So.2d 36 (Ala. Cr.App.), aff'd. on return to remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996). The appellant's arrest was valid."
661 So.2d at 793 (emphasis supplied).
The evidence relating to the blood found on the appellant's jeans was not the product of an illegal arrest, and the trial court correctly denied the appellant's motion to suppress the evidence.
Furthermore, quite apart from the authority granted under the arrest warrant, the law enforcement officers could legally enter the apartment and arrest the appellant based on probable cause coupled with exigent circumstances. Although the Fourth Amendment contains a general prohibition against a warrantless and nonconsensual entry into a suspect's residence for the purpose of making a routine felony arrest, "such an entry may be proper where probable cause to arrest the suspect exists and there are exigent circumstances making it impossible or imprudent for a warrant to be obtained." Bush v. State, 523 So.2d 538, 546 (Ala.Cr.App.1988), citing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). See also Ex parte Rieber, 663 So.2d 999, 1002 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995). The record reflects that several hours after Ledbetter was killed, law enforcement officers located the appellant's vehicle parked next to an apartment in Decatur. After the area was secured and a warrant was obtained, the officers entered the apartment to arrest the appellant. A woman named Betty Jackson was living in the apartment and was present when the appellant was arrested.[3] After knocking at the apartment door and receiving no response, the officers gained admittance using a key obtained from a security guard. At the hearing on the appellant's motion to suppress, Agent Ball testified that at the time he and the other officers entered the apartment to arrest the appellant, they had received from Ledbetter's husband and grandchildren a description of the man who had approached and stabbed Ledbetter at her house earlier that morning. Included in that description was a statement from Ledbetter's grandson that the man spoke with a speech impediment. Ed Weatherford, an investigator for the Lawrence County district attorney, knew the appellant, and had told Ball that the appellant matched the description provided by Ledbetter's husband and grandchildren, including the speech impediment. Ledbetter's husband and grandchildren had also provided a description of the automobile they had seen at the Ledbetter house. They noted that the automobile had had balloons tied to its rear antenna. Shortly before the appellant's vehicle was discovered in the parking lot of the apartment in *941 Decatur, a Decatur police officer had telephoned Ball and informed him that the appellant had been seen riding around Moulton in a maroon Oldsmobile with balloons tied to it. Ball testified that a police officer who located a vehicle matching the description in the apartment parking lot ran a tag check, which revealed that the vehicle was registered to the appellant.
"`Probable cause to arrest exists "where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed."'" Musgrove v. State, 519 So.2d 565, 572 (Ala.Cr. App.), aff'd, 519 So.2d 586 (Ala.1986), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988), quoting United States v. Pantoja-Soto, 739 F.2d 1520, 1523 (11th Cir.1984), cert. denied, 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 389 (1985). Clearly, the officers had probable cause to arrest the appellant for murder at the time they entered the apartment. The appellant argues, however, that the exigent circumstances necessary to permit the officers' entry into the apartment to effect a warrantless arrest were not present and as support for this argument points to the evidence that approximately five hours elapsed between the officers' discovery of his vehicle next to the apartment and their entry into the apartment. He also suggests that the officers were not compelled to act with any urgency because they had secured the area around the apartment and were able to take the time to obtain a warrant.
We do not think the appellant should benefit from the fastidiousness demonstrated by the officers before they gained entry into the apartment. See United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) ("The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential."). Importantly, Agent Ball also testified that the officers were aware that a woman, Betty Jackson, resided in the apartment where the appellant was believed to be and that, notwithstanding the officers' delay in entering the apartment, he believed that it was necessary to make a prompt arrest because of the seriousness of the crime the appellant was suspected of committing. In Bush, supra, 523 So.2d 538, this court set forth the following as factors that may indicate the existence of exigent circumstances:
"(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public; and (6) the peaceful circumstances of the entry."
523 So.2d at 546, citing United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir.), cert. denied, 481 U.S. 1072, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987). See Dorman v. United States, 435 F.2d 385, 392-93 (D.C.Cir.1970); 3 W. LaFave, Search and Seizure § 6.1(f) (3d ed.1996). Virtually all of the factors described in Bush were present in the instant case. "[T]he gravity of the underlying offense was of the highest nature. The defendant had committed an offense for which the death penalty was authorized." Musgrove, supra, 519 So.2d at 573. Law enforcement officers had reason to believe that the appellant would be armed, in view of the fact that they had information that he had stabbed Ledbetter to death approximately 13 hours earlier. *942 There was probable cause to believe that the appellant had committed the crime, including the statements of eyewitnesses. The officers had reason to believe that the appellant was inside the apartment where his automobile was parked outside and that his probable state of mind made it likely that further delay could allow the appellant to flee or could jeopardize the safety of the woman known to reside in the apartment. Additionally, there is evidence that the arrest was made without the use of force: the officers first attempted to effect entry by knocking and announcing themselves, and after their entry, the appellant was cooperative, even signing a consent-to-search form. Accordingly, even if the appellant's arrest was unauthorized under the warrant (and we emphatically do not so hold), it was justified on the ground of probable cause and exigent circumstances. See Ex parte Rieber, supra, 663 So.2d at 1002 (holding that there were exigent circumstances for the warrantless arrest of the defendant in his mother's mobile home even though over six hours had elapsed since the police had determined that probable cause existed to believe that the defendant had robbed and murdered the victim, given the grounds for the police's belief that the defendant was armed and dangerous, given the gravity of the offense, and given the possibility that the defendant's state of mind made it likely that any significant delay could allow him to flee or could jeopardize the safety of the other occupants of the mobile home in which he was residing).
The appellant contends that law enforcement officers did not adhere to the requirements of § 15-10-70, Ala.Code 1975, following his arrest. That statute provides:
"When any person charged with the commission of any offense is arrested in any county other than that in which he is triable by an officer of the county in which he is arrested, such arresting officer shall immediately commit him to a jail or guardhouse nearest to the place of arrest, and the sheriff of such county shall at once notify the sheriff of the county in which such person is triable of the fact of such arrest and confinement."
(Emphasis added.) By its own terms, § 15-10-70 does not apply in the appellant's case. Although the appellant was arrested in Morgan County, he was not arrested by Morgan County law enforcement officers (i.e., "officer[s] of the county in which he [was] arrested"). He was arrested by officers of the Lawrence County Sheriff's Department, the Lawrence County District Attorney's Office, the Moulton (Lawrence County) Police Department, and the Alabama Bureau of Investigation. Furthermore, even a failure to comply with § 15-10-70 would not have rendered the appellant's initial arrest illegal, and the appellant has not established any nexus between the physical evidence seized following his lawful arrest and the state's alleged failure to comply with § 15-10-70. Any failure to comply with the statute simply was not of "constitutional proportions." Therefore, there is no basis to suppress the evidence.

II.
The appellant contends that his constitutional rights were violated because he was not present at a pretrial hearing held on November 17, 1994. The appellant's trial counsel was present at the hearing. No objection to the appellant's absence was entered, and, in fact, the appellant's counsel stated for the record at the hearing that the matters taken up at the hearing had been previously discussed with the appellant, that the appellant was aware of the matters, and that, in his judgment, "there was no reason for him to be here." (R. 93.)
The record reflects that four matters were dealt with at the hearing. First, the trial court entertained the appellant's request to obtain the jury venire list as soon as possible. The state had no objection, and the trial court granted the appellant's request. Second, the appellant's trial *943 counsel asked the trial court about the status of a pending motion for a change of venue. The trial court stated that it intended to evaluate the responses of the jury venire to questions concerning pretrial publicity before it ruled on the motion. Nothing else was discussed about this matter. Third, the appellant's trial counsel asked the trial court when the appellant's motion to suppress would be heard. The trial court responded that the motion would be considered during the trial, outside the presence of the jury. Fourth, at the request of both the state and the appellant, the trial court sealed State's Exhibit A, which contained pretrial discovery materials, and placed the exhibit in the care of the circuit court clerk. No witnesses were appeared at the hearing.
Recently, in Ponder v. State, 688 So.2d 280 (Ala.Cr.App.1996), this court stated:
"`The court in Proffitt v. Wainwright, [685 F.2d 1227 (11th Cir.1982), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983)], acknowledged in a footnote that in Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), "which was a capital case, [the Court] stated that the sixth amendment privilege of confrontation could `be lost by consent or at times even by misconduct.' Snyder v. Massachusetts, 291 U.S. at 106, 54 S.Ct. at 332." Proffitt v. Wainwright, supra, at 1257, n. 43. See also State v. Davis, 290 N.C. 511, 227 S.E.2d 97, 110 (1976) ("[t]he strict rule that an accused cannot waive his right to be present at every stage of his trial upon an indictment charging a capital felony, State v. Moore, 275 N.C. 198, 166 S.E.2d 652 (1969), is not extended to require his presence at the hearing of a pretrial motion for discovery when he is represented by counsel who consented to his absence, and when no prejudice resulted from his absence"). See also State v. Piland, 58 N.C.App. 95, 293 S.E.2d 278 (1982), appeal dismissed, 306 N.C. 562, 294 S.E.2d 374 (1982) ("[t]he [capital] defendant in this case has not demonstrated any prejudice to him by his absence from a part of the hearing. The evidence elicited was not disputed and there has been no showing that it would have been different had the defendant been present").
"`Thus, if the appellant's presence ... would have been useless to [his] defense and if the [pre-trial] hearing was not considered to be a "critical stage" of [his] trial, then we can find no error in the appellant's absence from the hearing.'"
688 So.2d at 285, quoting Harris v. State, 632 So.2d 503, 512 (Ala.Cr.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (emphasis in Harris). See also Dobyne v. State, 672 So.2d 1319 (Ala.Cr. App.), on return to remand, 672 So.2d 1353 (Ala.Cr.App.1994), aff'd, 672 So.2d 1354 (Ala.1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571, 134 L.Ed.2d 670 (1996); Ex parte DeBruce, 651 So.2d 624 (Ala.1994); Burton v. State, 651 So.2d 641 (Ala.Cr. App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).
The appellant has not demonstrated any prejudice to him resulting from his absence from the pretrial hearing. The hearing was not a critical stage of the trial. The motions and requests discussed were either resolved in the appellant's favor or were postponed for future determination. Because no prejudice has been shown, we find no error resulting from the appellant's absence from the hearing. See Ex parte Trawick, 698 So.2d 162, 177 (Ala.1997) ("This Court has not held ... that a defendant has the right to be present at all pre-trial proceedings without regard to whether the defendant's absence will prejudice the defendant.") (emphasis in original).

III.
The appellant contends that the trial court's finding as a statutory aggravating circumstance in its sentencing order that the appellant was attempting to kidnap *944 "or possibly rape" the victim while committing the murder is evidence that the state failed to prove the existence of that statutory aggravating circumstance "beyond a reasonable doubt," as required by § 13A-5-45(e), Ala.Code 1975.
Section 13A-5-49, Ala.Code 1975, provides, in pertinent part, that the following shall be a statutory aggravating circumstance:
"(4) The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping."
The relevant part of the trial court's sentencing order provided as follows:
"The Court further finds pursuant to Section 13A-5-49(4) that the State has established the existence of the statutory aggravated circumstance as the Court finds from testimony presented in the present case that the Defendant, James Henry Borden, Jr., in killing Nellie Ledbetter was attempting to kidnap her or possibly rape her. Specifically, testimony was presented during the trial of the case by a male companion in the car with the Defendant on the day of the killing of Nellie Ledbetter of a sexual nature implying that the Defendant in his first visit to the Ledbetter residence and engaging in conversation with Mrs. Ledbetter was `trying to get him some.' The Court further finds that after dropping off the two male companions in the vehicle with him, Mr. Borden returned to the Ledbetter residence some forty-five (45) minutes later, had a knife with him, sat on the porch swing next to Mrs. Ledbetter, and told her that she was to come with him. When Mrs. Ledbetter resisted, she was fatally stabbed by the Defendant. The Court finds from the evidence that the logical interpretation of the evidence presented is that the Defendant, James Henry Borden, Jr., immediately preceding the fatal stabbing of Mrs. Nellie Ledbetter was attempting to kidnap or possibly rape her."
(C. 179-80.) (Emphasis supplied.) One can quibble with the trial court's use of the word "possibly" in reference to its finding that the appellant was attempting to rape Ledbetter while committing the murder. However, it is clear from the court's elaboration in its findings that the court determined that the state had proved that the appellant was attempting to commit a rape. The court made specific reference to the testimony of the appellant's companion Larry Joe Peoples that the appellant had acknowledged that he approached Ledbetter with the purpose of "trying to get him some." Peoples also testified that the appellant had stated that he probably would have been successful in this attempt if Ledbetter's husband had not arrived on the porch. Ledbetter's grandson testified that when the appellant later returned to the residence, the appellant placed a knife to Ledbetter's throat and ordered her to come with him and that he then stabbed her when she refused. We find that there was evidence to support a finding beyond a reasonable doubt that the appellant was attempting to commit a rape when he committed the murder.
Furthermore, the trial court also found that the appellant was attempting to commit a kidnapping when he committed the murder. The court's finding in this regard was not qualified by the term "possibly." In order to find the aggravating circumstance under § 13A-5-49(4), it was not necessary that the court determine that the state had proven both an attempted kidnapping and an attempted rape. A finding that the state had proven an attempted kidnapping, alone, was sufficient to establish the aggravating circumstance under § 13A-5-49(4). The court's finding that the appellant was attempting to kidnap Ledbetter when he committed the murder was clear, was elaborated upon in the court's order, and was supported by the state's evidence. As previously noted, Ledbetter's grandson testified that the appellant placed a knife to Ledbetter's throat and told her, "You better come with me," *945 and then stabbed her when she refused. There was no error in the trial court's finding that the state had established the aggravating circumstance under § 13A-5-49(4).

IV.
We agree with the state's contention in its brief to this court that the trial court's written sentencing order is deficient in that the trial court failed to comply with the requirement of § 13A-5-47(d), Ala.Code 1975, that it "enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, each mitigating circumstance enumerated in § 13A-5-51, and any additional mitigating circumstances offered pursuant to § 13A-5-52." (Emphasis added.) Accordingly, we remand this cause to the trial court with directions that that court enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, each mitigating circumstance enumerated in § 13A-5-51, and any additional nonstatutory mitigating circumstances offered pursuant to § 13A-5-52. See Taylor, supra, 666 So.2d at 71; Murry v. State, 562 So.2d 1348 (Ala.Cr.App.1988); Daniels v. State, 534 So.2d 628 (Ala.Cr.App.1985), aff'd, 534 So.2d 656 (1986), cert. denied, 479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850 (1987); Ex parte Cochran, 500 So.2d 1179 (Ala.1985). No evidentiary hearing is anticipated or required. The rewritten sentencing order of the trial court shall be filed in this court within 42 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
LONG, Presiding Judge.
This cause was originally remanded to the trial court "with directions that that court enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, [Ala.Code 1975,] each mitigating circumstance enumerated in § 13A-5-51, and any additional nonstatutory mitigating circumstances offered pursuant to § 13A-5-52." See Borden v. State, 769 So.2d 935, 945 (Ala.Cr.App. 1997). The trial court has conscientiously complied with those directions and has submitted an amended sentencing order on return to remand that satisfies the statutory requirements.
The amended sentencing order, which is attached as an Appendix to this opinion, reveals that the trial court found the existence of two statutory aggravating circumstances: that the appellant, in September 1975, had been convicted of a felony (second-degree murder) involving the use of violence to the person, see § 13A-5-49(2); and that the capital offense was committed while the appellant was engaged in an attempt to commit a kidnapping and a rape, § 13A-5-49(4). The amended order further reveals that the trial court, after making specific written findings as to each circumstance, found that none of the statutory mitigating circumstances enumerated in § 13A-5-51 was proven to exist.
The trial court stated in its amended sentencing order that it considered the nonstatutory mitigating evidence offered by the appellant pursuant to § 13A-5-52. Specifically, the trial court considered evidence presented by the appellant that he had an IQ of 66; that he could not read or write; and that he had received no psychiatric care since 1980, in part because of his incarceration. The trial court also considered the findings of the appellant's expert, Dr. William B. Beidleman, a clinical psychologist who evaluated the appellant and whose findings, the court specifically noted, differed in part from those of Dr. Lawrence R. Maier, a clinical psychologist who, at the court's request, also evaluated the appellant. Dr. Maier concluded that at the time of the murder, the appellant was not suffering from any mental illness and that he had the ability to distinguish right from wrong. The trial court found that the evidence indicated that the appellant was legally responsible for his actions and *946 that the appellant's contentions to the contrary were unfounded.
The trial court also considered the nonstatutory mitigating evidence offered by the appellant concerning the length of time the jury deliberated before issuing its advisory verdict of 10-2 in favor of the death sentence. In addition, the trial court considered the argument made by the appellant's counsel that a death sentence would not have a deterrent effect on crime and would not restore the victim's life and that a sentence of life imprisonment without parole would require the appellant to consider the import of his crime for the remainder of his life. The trial court also considered the presentence report, evidence presented at trial and at the sentencing hearings, and the jury's advisory verdict. The trial court's findings show that the court carefully weighed the aggravating and mitigating circumstances, found that the aggravating circumstances outweighed the mitigating circumstances, and then sentenced the appellant to death.
We have reviewed the appellant's sentence in accordance with the provisions of § 13A-5-53, Ala.Code 1975, which require that, in addition to reviewing the case for any error involving the appellant's capital murder conviction, we also review the propriety of the appellant's death sentence. This review requires that we determine: (1) whether any error adversely affecting the rights of the appellant occurred in the sentence proceedings; (2) whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the appropriate sentence, we determine the following: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by this court of the aggravating and mitigating circumstances indicates that death is the appropriate sentence; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
We have carefully searched the record and have found no error adversely affecting the rights of the appellant in either the guilt or the sentence phases of his trial. The trial court's findings concerning the aggravating and mitigating circumstances, as supplemented in the return to remand, are reasonable and are supported by the evidence. We find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances indicates that death is the appropriate sentence. Considering both this particular crime and this particular defendant, we find that the death sentence is neither excessive nor disproportionate to the penalty imposed in similar cases. See, e.g., Arthur v. State, 711 So.2d 1031 (Ala.Cr.App.1996), aff'd, 711 So.2d 1097 (Ala.1997); Nelson v. State, 681 So.2d 257 (Ala.Cr.App.), aff'd, 681 So.2d 260 (Ala. 1996); and Carroll v. State, 599 So.2d 1253 (Ala.Cr.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994).
Accordingly, the appellant's conviction and his sentence of death are affirmed.
AFFIRMED.
McMILLAN, COBB, BROWN, and BASCHAB, JJ., concur.

APPENDIX

In the Circuit Court for Lawrence County, Alabama

State of Alabama, Plaintiff

v.

James Henry Borden, Defendant.

Criminal Case No. CC-93-228

RETURN TO REMAND

AMENDED SENTENCING ORDER UPON REMAND
This cause is before the trial court upon remand from the Alabama Court of Criminal *947 Appeals with directions to enter specific written findings concerning the existence or nonexistence of each and every aggravating and mitigating circumstance as set forth in the Code of Alabama, § 13A-5-49, § 13A-5-51, and § 13A-5-52, respectively. Consistent with the Appellate Court's directives, this Court enters the following amended sentencing order.
The defendant, James Henry Borden, Jr., was found guilty on December 1, 1994, by a duly impaneled jury of the offense of capital murder. Also, on December 1, 1994, the same jury which heard the guilt portion of this case returned an advisory verdict of death by electrocution in a vote of ten (10) to two (2) for death. Thereafter, this case was set for a sentencing hearing on December 6, 1994, at 8:00 o'clock a.m., pursuant to § 13A-5-47, Code of Alabama, and on this occasion the defendant appeared with counsel as did the District Attorney and Assistant District Attorney for Lawrence County. A presentence report was presented by Max Sanders, Probation Officer for Lawrence County, received by the defendant and his attorneys as well as the District Attorney for the State of Alabama. The State of Alabama presented no additional evidence at the sentencing hearing nor did the defendant, but comments were allowed and received in reference to the pre-sentence report, which was made a part of the record. The defendant objected to parts of the pre-sentence report which were hearsay, but otherwise did not dispute any findings or statements made in the presentence report. The Court, as a part of the process of evaluating the sentence to be imposed in this case, considered the pre-sentence report as submitted. Counsel were allowed to be heard in argument as to the sentence to be imposed in the case and as to the aggravating or mitigating circumstances. Following argument, the defendant was brought before the Court for allocution and asked if he had anything to say before sentence was pronounced against him. The defendant saying nothing, the Court therefore finds and orders:
Consistent with the directives of § 13A-5-47, Ala.Code 1975, as amended, the Court has carefully considered the evidence and makes findings now as to aggravating circumstances, as enumerated in § 13A-5-49:
The Court does not make a finding of an aggravating circumstance that the present capital offense was committed by Mr. Borden while under sentence of imprisonment, as set forth in § 13A-5-49(1).
The Court specifically finds under § 13A-5-49(2) that the State has established the existence of an aggravating circumstance of the defendant's having been previously convicted of a felony involving the use of violence to the person wherein the defendant, James Henry Borden, Jr., on September 10, 1975, was convicted of second degree murder involving the shotgun slaying of one Harold Young. For this offense, the defendant was sentenced to 32 years in prison and served time in the state penal system.
The Court specifically finds that there are no aggravating circumstances present as stated in § 13A-5-49(3) as the evidence clearly shows the defendant, through his actions, intended to kidnap, rape and murder only the victim, Nellie Ledbetter, and no other person.
The Court further finds from the evidence that the State has established the presence of the aggravating circumstance set forth in § 13A-5-49(4) as the evidence clearly shows that the defendant, James Henry Borden, Jr., in killing Nellie Ledbetter, was attempting to kidnap and to rape her. Specifically, testimony was presented by a male companion in the car with the defendant on the day of the killing of Nellie Ledbetter of the defendant's comments of a sexual nature implying that the defendant in his first visit to the Ledbetter residence and engaging in conversation with Mrs. Ledbetter was "trying to *948 get him some." The Court further finds that after dropping off the two male companions in the vehicle with him, Mr. Borden returned to the Ledbetter residence some 45 minutes later, had a knife with him, sat on the porch swing next to Mrs. Ledbetter, and told her that she was to come with him. When Mrs. Ledbetter resisted, she was fatally stabbed by the defendant. The Court finds from the evidence that the logical interpretation of the evidence presented is that the defendant, James Henry Borden, Jr., immediately preceding the fatal stabbing of Mrs. Nellie Ledbetter was attempting to kidnap and rape her.
The Court finds that the aggravating circumstance as set forth in § 13A-5-49(5) is not present as the murder of Nellie Ledbetter was not committed for the purpose of avoiding or preventing a lawful arrest or escaping from custody.
The Court finds that the aggravating circumstance as set forth in § 13A-5-49(6) is not present as the murder was not committed for pecuniary gain.
The Court finds that the aggravating circumstance as set forth in § 13A-5-49(7) is not present as the murder was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
The Court finds that the aggravating circumstance as set forth in § 13A-5-49(8) is not present as the capital offense committed by the defendant, James Henry Borden, Jr., was not especially heinous, atrocious, or cruel compared to other capital offenses.
The Court, consistent with § 13A-5-51 makes the following findings as to mitigating circumstances.
The Court finds § 13A-5-51(1) not to be present as a mitigating circumstance as the defendant, James Henry Borden, Jr., has a prior significant history of previous criminal activity, including one prior homicide conviction in 1975.
The defendant argued the existence of the statutory mitigating circumstance as set forth in § 13A-5-51(2) wherein the capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance. The Court has carefully considered the evidence presented involving the psychological evaluations performed on the defendant by Dr. Lawrence R. Maier and also Dr. William B. Beidleman, and further the testimony presented as to whether or not the defendant was drinking to the extent that he was intoxicated and otherwise impaired at the time of the criminal act in question. The Court specifically finds that the mitigating circumstance as set forth in § 13A-5-51(2) has not been established and that at the time of the killing of Nellie Ledbetter the defendant was not under the influence of extreme mental or emotional disturbance.
The Court finds there to be no mitigating circumstance present as set forth in § 13A-5-51(3) as the victim, Nellie Ledbetter, in no way participated in the defendant's conduct or consented to it. Specifically, Nellie Ledbetter, was stabbed to death by the defendant, James Henry Borden, Jr., when she refused to leave with him.
The Court finds there to be no mitigating circumstance present as set forth in § 13A-5-51(4) as the defendant was obviously not an accomplice in the capital offense committed by another person with his participation being relatively minor as James Henry Borden, Jr. was the sole participant and his conduct caused the death of Nellie Ledbetter.
The Court finds there to be no mitigating circumstance present as set forth in § 13A-5-51(5) as the defendant did not act under extreme duress or under the substantial domination of another person. No testimony was presented and there is no evidence that the defendant acted as a product of anything but his own volition in causing the death of Nellie Ledbetter.
*949 The defendant also argues the existence of the mitigating circumstances set forth in § 13A-5-51(6) that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. The Court also considered the testimony of the two expert witnesses, Dr. Lawrence Maier and Dr. William Beidleman, as well as other evidence presented on behalf of the State and the defendant at the guilt portion of the trial as well as evidence presented during the sentence phase of the trial. The Court specifically finds that the mitigating circumstances in § 13A-5-51(6) have not been established by the defendant.
The Court further finds the mitigating circumstance as set forth in § 13A-5-51(7) as to the age of the defendant at the time of the crime is not present as the defendant at the time he killed Nellie Ledbetter was 44 years of age.
The Court has further considered any additional mitigating circumstances as required to be considered by § 13A-5-52, Ala.Code 1975, as amended, argued by defendant's counsel at the sentencing hearing. Specifically, the Court has considered argument on behalf of the defendant that Mr. Borden has an IQ of 66, is illiterate, and has received no psychiatric care since 1980, due in part to his incarceration. The Court has considered the evidence presented through Dr. Beidleman, which differs in part from the findings of Dr. Lawrence Maier, pursuant to his forensic evaluation of Mr. Borden. Dr. Maier testified that at the time of the crime committed, Mr. Borden had the ability to know and distinguish right from wrong and was not suffering from any type of severe mental illness that would have affected his motivation to commit the crime in question. Dr. Maier also testified that the defendant's consumption of alcohol at the time that he killed Nellie Ledbetter would not have prevented his ability to determine right from wrong. The Court finds the above arguments of the defendant to be unfounded as the evidence indicates that the defendant is legally responsible for his actions.
Also, argued on behalf of the defendant was the mitigating circumstance of the length of time the jury deliberated and considered the aggravating and mitigating circumstances. The Court has also considered the general argument of counsel for Mr. Borden that the sentence of death would not have a deterrent effect to crime and it would not restore the life of the victim, Nellie Ledbetter.
The Court further considered the argument of the punishment aspect of a sentence of life without parole, which would require the defendant to consider the import of his criminal act each remaining day of his life.
The Court has further considered all nonstatutory mitigating circumstances, whether argued or not, and does not find in the evidence any additional mitigating circumstances under § 13A-5-52.
The Court, in considering the additional mitigating circumstances argued on behalf of the defendant does not find that any of these circumstances outweigh the aggravating circumstances resulting in a sentence of life without parole instead of death.
The Court, consistent with the directives of § 13A-5-58, Ala.Code 1975, as amended, in weighing the evidence of aggravating and mitigating circumstances presented, has carefully considered the mitigating circumstances, both statutory and nonstatutory, and finds that in any event the aggravating circumstances as established by the State clearly outweigh any evidence of mitigating circumstances as presented.
The defendant, James Henry Borden, Jr., in stabbing Nellie Ledbetter to death *950 committed a shockingly callous, senseless act. The Court finds from testimony presented that the defendant accompanied by two other male companions drove his vehicle to the residence of Nellie Ledbetter, had exited his vehicle and engaged in conversation with the victim and members of her family at her residence for some brief period of time, left and returned alone some 45 minutes later armed with a knife. Mr. Borden positioned himself on the porch swing next to Mrs. Ledbetter, made a statement to the victim that she was coming with him, and when she resisted, stabbed Mrs. Ledbetter twice, leaving her bleeding to death on her front porch. The brutal killing was inflicted on the victim by the defendant in the presence of at least one young grandchild of Mrs. Ledbetter, who testified at the defendant's trial.
The Court further has considered the advisory verdict of the jury wherein the jury during the punishment phase, voted ten (10) to two (2) that the sentence in the case be death by electrocution. After carefully considering all the evidence in the case, the pertinent statutory provisions and the evidence presented at the sentence hearing held before the Court, together with the advisory verdict of the jury, it is the decision of the Court that the proper sentence in this case be that James Henry Borden, Jr. be sentenced to death by electrocution for the fatal stabbing of Nellie Ledbetter.
The defendant, standing before the bench upon being sentenced by the Court to death, was further advised of his right to appeal and in fact that there would be an automatic appeal in his case and that separate counsel would be appointed to represent him on appeal, and that he and counsel would be provided with a certified copy of the record and reporter's transcript provided without cost to him. The Court notes that the defendant, through counsel, gave oral notice of appeal.
It is FURTHER ORDERED that costs are taxed against the defendant.
DONE and ORDERED this the 4th day of November, 1997,
 /s/ Philip Reich, Circuit Judge.
NOTES
[1] "Rule 1.5, [Ala.R.Crim.P.,] as it originally read effective January 1, 1991, made these rules applicable to proceedings `commenced' on or after January 1, 1991. The amendment of April 21, 1992, makes these criminal rules applicable to all proceedings without regard to when they were `commenced.'" Committee Comments to Rule 1.5, Ala.R.Crim.P.
[2] The Committee Comments to Rule 3.3 state, in pertinent part, the following:

"Rule 3.3(a) requires that an arrest warrant be directed to and executed by `any law enforcement officer within the State of Alabama.' Prior Alabama practice with regard to those persons who may arrest with a warrant was in a state of considerable confusion. The applicable statute enumerating those officers who may arrest with or without a warrant is Alabama Code 1975, § 15-10-1, which provides:
"`An arrest may be made, under a warrant or without a warrant, by any sheriff or other officer acting as sheriff or his deputy, or by any constable acting within their respective counties, or by any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county.'
"The rules provide a functional definition of `law enforcement officer.' Under the definition contained in Rule 1.4(p), [Ala. R.Crim.P.,] anyone who serves as an officer, employee, or agent of the State of Alabama who has a legal duty to maintain order and to make arrests (whether in a general or limited capacity) will be considered a `law enforcement officer' and will be able to execute arrest warrants."
In Alabama Criminal Procedure § 3.3 at 129 n.9 (2d ed.1994), Justice H. Maddox notes:
"As a practical matter, most arrest warrants will probably be executed by officials who are authorized by law to enforce the laws within their particular jurisdictions, but the Rule is broad enough to allow any `law enforcement officer' to execute it anywhere `within the State of Alabama.'"
[3] At trial, Jackson testified that the appellant was living with her at the apartment at the time of his arrest.