McMILLAN, Presiding Judge.
On December 1, 1994, the appellant, James Henry Borden, Jr., was found guilty of the capital offense of murder, for intentionally causing the death of Nellie Ledbetter after he had been convicted of another murder within the 20 years preceding this offense. See § 13A-5-40(a)(13), Ala.Code 1975. The jury, by a vote of 10 to 2, recommended a sentence of death. The trial court accepted the jury’s recommendation and sentenced Borden to death by electrocution. After the case was remanded for specific findings regarding the existence of aggravating and mitigating circumstances, see Borden v. State, 769 So.2d 935 (Ala.Crim.App.1997), this court *936 affirmed Borden’s conviction. See Borden v. State, 769 So.2d 935 (Ala.Crim.App.1997). The Alabama Supreme Court affirmed our judgment, see Ex parte Borden, 769 So.2d 950 (Ala.2000), and the United States Supreme Court denied Borden’s petition for certiorari review. See Borden v. Alabama, 531 U.S. 961, 121 S.Ct. 389, 148 L.Ed.2d 299 (2000). The relevant facts are set out in this court’s opinion on direct appeal.
On October 18, 2001, Borden timely filed a Rule 32 petition, challenging his conviction and sentence of death. The State filed its initial response and supporting affidavits on December 27, 2001. The State then filed additional affidavits and a motion to dismiss the petition on January 22, 2002. On July 31, 2002, the trial court permitted the State to amend its response and motion to reflect two changes in the law. In the amendment, the State withdrew its reliance on procedural bars regarding Borden’s claim that he was mentally retarded and that, in light of Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), he should not be executed, provided that Borden amended the claim to comply with Rule 32.6(b), Ala. R.Crim. P. The State also argued that Borden’s challenge to the constitutionality of electrocution as a method of carrying out the death penalty had been rendered moot on July 1, 2002, when the primary method of execution in Alabama was changed to lethal injection. On August 22, 2002, Borden filed a response to the State’s motion to dismiss and a motion to vacate his death sentence, in which he set out specific facts supporting his mental-retardation claim. He also filed an amended petition and a motion to amend three claims, including the Atkins claim, and add a new claim under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). On September 30, 2002, the State filed a motion stating its opposition to any changes other than the amendment of the Atkins claim. On March 14, 2003, the circuit court dismissed Borden’s petition. In its order of dismissal, the court instructed Borden to amend his Atkins claim within 21 days to comply with Rule 32.6(b) and to file his notice of appeal within 42 days of the date of the order. On April 4, 2003, Borden filed a motion for reconsideration, in which he argued that his August 22, 2002, filings contained sufficient facts to support the Atkins claim. He filed his notice of appeal on April 17, 2003, before the circuit court had ruled on his motion.
The State has asked this court to remand this case for a hearing on the merits of Borden’s claim of mental retardation under Atkins. In Atkins, the United States Supreme Court held:
“We are not persuaded that the execution of mentally retarded criminals will measurably advance the deterrent or the retributive purpose of the death penalty. Construing and applying the Eighth Amendment in the light of our ‘evolving standards of decency,’ we therefore conclude that such punishment is excessive and that the Constitution ‘places a substantive restriction on the State’s power to take the life’ of a mentally retarded offender.”
536 U.S. at 321, 122 S.Ct. 2242 (quoting Ford v. Wainwright, 477 U.S. 399, 405, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)). This court has held that Atkins applies retroactively to cases that are on collateral review. Clemons v. State, 55 So.3d 314 (Ala.Crim.App.2003).
In his original petition, Borden failed to state a factual basis for his claim that carrying out the death-penalty sentence in his case constituted cruel and unusual punishment. However, in his August 22, 2002, response and in his amended petition, Borden set out approximately nine pages of facts underlying the Atkins claim. Because this claim was sufficiently *937 pleaded, the circuit court erred in finding that Borden failed to meet the specificity requirements of Rule 32.[1] Therefore, we remand this cause to the circuit court with instructions for that court to conduct an evidentiary hearing and make specific, written findings of fact as to Borden’s claim that he is mentally retarded and that his sentence of death is unauthorized as a matter of law.[2] In determining whether Borden is mentally retarded, the court should consider the standards set forth in Ex parte Smith, [Ms. 1010267, March 14, 2003] — So.3d - (Ala.2003); Ex parte Perkins, 851 So.2d 453 (Ala.2002); McGowan v. State, 990 So.2d 931 (Ala.Crim.App.2003); and Stallworth v. State, 868 So.2d 1128, 1178 (Ala.Crim.App.2001) (opinion on return to second remand).[3] The circuit court shall file its return, including its specific, written findings of fact and a transcript of the evidentiary hearing, with this court within 98 days after the release of this opinion.
REMANDED WITH DIRECTIONS.
COBB, BASCHAB, SHAW, and WISE, JJ., concur.

On Return to Remand

McMILLAN, Presiding Judge.
On February 27, 2004, we remanded this cause, following the appellant’s Rule 32 petition, for the circuit court to conduct an evidentiary hearing and to make specific, written findings of fact as to whether Borden is mentally retarded and whether, therefore, in light of Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), his sentence of death is unauthorized as a matter of law. The circuit court has now filed its return, which states, in pertinent part:
“On August 12, 2004, this Court held a status conference at which the State of Alabama stipulated that Mr. Borden is mentally retarded and that his death sentence is prohibited as a matter of law pursuant to Atkins v. Virginia, 536 U.S. 304[, 122 S.Ct. 2242, 153 L.Ed.2d 335] (2002). Both parties agreed during the status conference that this Court should find that Mr. Borden is a person with mental retardation and in accordance with Atkins his sentence should be reduced to life imprisonment without parole.
“Pursuant to the opinion of the Alabama Court of Criminal Appeals, this Court has reviewed the evidence in light of the standards for determining mental retardation articulated in Atkins v. Virginia, 536 U.S. 304[, 122 S.Ct. 2242, 153 L.Ed.2d 335] (2002); Ex parte Smith, [(No. 1010267, Mar. 14, 2003) - So.3d -(Ala.2002)]; Ex parte Perkins, 851 So.2d 453 (Ala.2002); McGowan v. State, 990 So.2d 931 (Ala.Crim.App.2003)]; and Stallworth v. State, [868 So.2d 1128 (Ala.Crim.App.2001)], and finds that Mr. Borden meets the definition of mental retardation set forth in Atkins and Perkins and therefore cannot be sentenced to death pursuant to Atkins v. Virginia, 536 U.S. 304[, 122 S.Ct. 2242, 153 L.Ed.2d 335] (2002). In support of this *938 determination, this Court specifically finds the following:
“Mr. Borden suffers from significantly subaverage general intellectual functioning. Dr. King[1] administered the Wech-sler Adult Intelligence Scale III (WAIS-III)[2] to Mr. Borden, who generated a Verbal IQ of 59, a Performance IQ of 55, and a Full Scale IQ of 53. Forensic Evaluation Report of Dr. Glen King dated April 7, 2004, at 5, attached at Appendix A (hereinafter ‘King’s Report’). Dr. King opined that Mr. Borden ‘has always functioned in the retarded range of intellectual ability and this is confirmed again by previous testing completed some years ago.’ Id. Dr. King concluded that Mr. Borden functions at ‘an extremely low level intellectually.’ Id.
“Mr. Borden suffers from significant or substantial deficits in adaptive behavior. Dr. King reported that he administered the Independent Living Scale Test to Mr. Borden ‘in order to further assess his adaptive functioning.’ King’s Report at 5. This test is ‘designed to rate an individual’s ability to function independently as an adult.’ Id. Mr. Borden’s performance on this test was ‘extremely impaired.’ Id. Dr. King reported that Mr. Borden functions slightly below average with regard to memory and orientation and the remainder of his scores were all at the lowest possible level. He is extremely impaired in his ability to manage money, manage home and transportation, manage health and safety and in his social adjustment. He also has a full scale standard score which is at 55, commensurate with his overall IQ score and at the lowest possible level assessed by this instrument. King’s Report at 5. In addition, Dr. King found that Mr. Borden scored extremely low in ‘problem solving and performance/information.’ King’s Report at 5. Mr. Borden was unable to accomplish ‘even the rudiments’ of filling out a sample check, he ‘did not know what information could be obtained from a bus schedule,’ and ‘because of his inability to read, he was unable to locate a name in the telephone book in order to make a phone call.’ King’s Report at 5. Additionally, Mr. Borden cannot read or write. King’s Report at 4.
“The onset of Mr. Borden’s mental retardation occurred before the age of 18. Dr. King concluded that ‘[a]t the time of the evaluation, and for his lifetime, since at least the age of 16, Mr. Borden has functioned in the mild to moderate range of mental retardation with poor adaptive skills.’ King’s Report at 6. Dr. King noted that Mr. Borden may suffer from ‘generalized cerebral damage’ as a result of a high fever and coma, and reported that in addition to congenital retardation, this individual probably has some dementia associated with high fever as the result of an infectious disease.’ King’s Report at 3, 5.
“Dr. King reported that Mr. Borden ‘generated a protocol that is exactly what I would expect based on my extensive experience and training in assessing mentally retarded individuals,’ and he found no evidence of malingering or faking during the evaluation. King’s Report at 6. Dr. King diagnosed Mr. Borden as ‘moderately mentally retarded.’ King’s Report at 6.
“Dr. King’s findings are confirmed by other experts who have consistently di *939 agnosed Mr. Borden with mental retardation. These experts include the following:
“Dr. William Beidleman, the defense expert at Mr. Borden’s 1994 trial, administered the Wechsler Adult Intelligence Scale Revised (WAIS-R) and determined that Mr. Borden has a ‘full scale IQ score of 66,’ which falls within the mild mental retardation range.’ (R. 952-53.) Dr. Beidleman testified that these scores were ‘consistent with the past records [he] reviewed.’ (R. 953.)
“Dr. Lawrence Maier, the court-appointed expert at Mr. Borden’s 1994 trialt,] agreed that an IQ score of 65-66 for Mr. Borden would be accurate, (R. 912), and diagnosed Mr. Borden as ‘mentally retarded, degree mild.’ (R. 921.)
“Both Dr. Beidleman and Dr. Maier agreed that Mr. Borden is illiterate. (R. 902, 953-54). Both Dr. Beidleman and Dr. Maier agreed that Mr. Borden’s judgment, insight and behavior control are impaired. (R. 916, 978). Both Dr. Maier and Dr. Beidleman found evidence of brain damage from a fever suffered by Mr. Borden in 1966, which may have resulted in an organic mental or brain disorder. (R. 919-20, 956-58, 969).
“The Forensic Evaluation Board of Bryce Psychiatric Hospital diagnosed Mr. Borden as ‘mildly mentally retarded’ in 1975. (C. 000054, 000055, 000121). As noted in the Forensic Unit Psycho-diagnostic Assessment, two Bryce psychologists concluded that Mr. Borden functioned in the ‘moderately retarded range.’ (C. 000077, 000078), which they concluded may be a reflection of brain trauma associated with infection and high fever. (C. 000078.)
“Dr. Garland Hall treated Mr. Borden for a tetanus infection and encephalitis in 1966 and noted that he had always had some difficulty in talking and was somewhat retarded. (C. 000099; R. 936, 956).
“In light of these consistent findings of Mr. Borden’s mental retardation over the past thirty years, and the stipulation of the parties, this Court finds that Mr. Borden is mentally retarded and that his sentence of death is prohibited by the Eighth and Fourteenth Amendments to the United States Constitution as determined by the United States supreme Court in Atkins v. Virginia, 536 U.S. 304[, 122 S.Ct. 2242, 153 L.Ed.2d 335] (2002), and that he must now be sentenced to life without the possibility of parole.”
After reviewing the record and the findings of the circuit court, we find that Borden is mentally retarded and therefore that he cannot be sentenced to death. Accordingly, this cause is remanded to the circuit court, with directions to resentence Borden to life imprisonment without the possibility of parole. Due return to be made to this Court within 42 days of the release of this opinion.
REMANDED WITH DIRECTIONS. 
COBB, BASCHAB, SHAW, and WISE, JJ., concur.

. The State noted in its filings on July 18, 2002, and September 30, 2002, that Borden would be entitled to an evidentiary hearing if he properly amended his claim.

. Borden also claimed that his trial counsel were ineffective for failing to "marshal evidence” in support of the Atkins claim. Because he failed to make the requisite showing of prejudice, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the circuit court need not address this claim on remand. We pretermit discussion of Borden’s remaining arguments at this time.

.The Alabama Legislature has not yet enacted legislation addressing the issue raised by Atkins.

. Dr. Glen King is the State's expert.

. The Court in Atkins recognized that the WAIS-III is the “standard instrument in the United States for assessing intellectual functioning." Atkins, 536 U.S. at 309 n. 5, 122 S.Ct. 2242 (citation omitted).